[No. 9193-0-I.   Division One.   February 22, 1982.]

THE CITY OF SEATTLE, *Respondent*, v. DREW
D. TOLLIVER, *Appellant*.

*Judith E. Bendich* and *Bendich, Stobaugh & Strong,* for
appellant.

*Douglas N. Jewett, City Attorney,* and *Augustin Jime-
nez, Assistant,* for respondent.

RINGOLD, J.—Drew Tolliver appeals the judgment and sentence entered upon his conviction by the court of drunk driving and driving with a suspended license. Seattle Traffic Code 11.56.020, 11.56.320. Because the trial court properly determined that Tolliver was driving his vehicle on a "way open to the public", we affirm.[1]

At about 2:15 a.m. on March 22, 1980, Officer De Pola was driving southbound on 15th Avenue Northwest in Seattle when he received a radio report of a loud banging sound. As he approached Northwest 75th Street, he observed a white Cadillac in a parking lot on the northwest corner of the intersection with a green vine hanging from its front bumper. The officer watched as the Cadillac approached the curb and then backed into a parking space in the parking lot without ever entering the street. Deciding to investigate because of the green vine, the officer spoke with the driver, Drew Tolliver, and concluded he was intoxicated. Tolliver was arrested and charged with drunk driving and driving with a suspended license.

After conviction in municipal court, Tolliver appealed to the superior court for a trial de novo. In the superior court trial, he stipulated that he was under the influence and that he had a suspended driver's license at the time of the arrest. He moved to dismiss on the ground that a violation of the City's traffic code could not occur on the parking lot in question. He also based his motion on the insufficiency of the evidence to show that the parking lot was subject to the Seattle Traffic Code. The trial judge in his oral opinion concluded that the parking lot was an area open to the public and subject to the City's traffic code. The court subsequently entered written findings of fact and conclusions of law and a guilty verdict on both counts.

---

[1] On November 5, 1981, this cause came on for oral argument. Thereafter this court remanded to the Superior Court for the entry of findings of fact and conclusions of law and stayed further consideration on the merits awaiting the Supreme Court's review of *State v. Day*, 27 Wn. App. 854, 620 P.2d 1023 (1980). After filing of the opinion in *State v. Day*, 96 Wn.2d 646, 638 P.2d 546 (1981), the parties submitted additional briefs.

The Seattle Traffic Code is applicable to "all persons operating vehicles upon the streets, alleys and ways open to the public of the city of Seattle except as otherwise specifically provided." Seattle Traffic Code 11.12.020.[2] A "way open to the public" includes "any . . . parking area . . . adapted to and fitted for travel, that is in common use by the public with the consent, expressed or implied, of the owner . . ." Seattle Traffic Code 11.14.715.

The ultimate issue in this case is whether the parking lot in question is a "way open to the public" as that term is defined in the Seattle Traffic Code. Before examining the arguments of the parties, we turn to the trial court's unchallenged findings to provide a factual background for this legal issue.

The parking lot where Tolliver was arrested is bordered on the north by a chain link fence covered with hedges and ivy, on the east by a paved driveway opening onto 15th Avenue Northwest, on the south by Northwest 75th Street, and on the west by an unpaved alley opening onto 75th Street. There is an apartment building immediately north of the lot and another apartment building immediately south of the lot across 75th Street, but neither building has parking facilities. The lot is marked with crisscrossing white lines and has a sign indicating that unauthorized vehicles will be impounded.

The arresting officer had previously observed people drive vehicles into the lot and walk to two taverns located north of the lot, although there is another parking lot expressly intended for tavern patrons alongside one of the taverns. There are no signs authorizing tavern patrons to park in the lot where Tolliver was arrested.

Tolliver contends that the parking lot in question is not a "way open to the public" because it does not contain clearly

---

[2]The drunk driving ordinance is even broader because it applies to anyone driving a vehicle "within the city." Seattle Traffic Code 11.56.020(1). Because we hold that the parking lot in question satisfies the narrower meaning of "way open to the public," we do not reach the issue of whether all private property within Seattle is included in the drunk driving ordinance.

defined traffic routes designed to get from one place to another and is not in common use by the public with the consent of the owner. He asserts that shopping centers are properly included within the definition of a "way open to the public", but parking areas used solely for entering and leaving a parking space are not within the definition of that term because they are not "adapted to and fitted for travel." In support of this argument, Tolliver asserts that the definition is ambiguous and must be strictly construed against the City with all doubts resolved against including borderline conduct. *State v. Lundell,* 7 Wn. App. 779, 503 P.2d 774 (1972).

██ It is clear from the definition of "way open to the public" that the City intended some limitations to the scope of the traffic code, but Tolliver would limit the code further than intended by the City. A privately owned paved parking lot on a major intersection with easy access to both adjoining streets is within the definition of "way open to the public." With access from 75th Street through the unpaved alley and from 15th Avenue through the driveway, the parking lot is adapted to and fitted for travel. With the history of its use by the public for access to nearby taverns, it is reasonable to conclude that the lot is in common use by the public with the implied consent of the owner.[3] The trial court's findings sustain a conclusion that Tolliver was driving a vehicle upon a "way open to the public" in a "parking area . . . adapted to and fitted for travel [and] in common use by the public with the consent, expressed or implied, of the owner . . ." Seattle Traffic Code 11.14.715, 11.12.020, 11.56.020, 11.56.320.

██ Tolliver also contends that the definition of "way open to the public" is so unclear that the ordinance is unconstitutionally vague. The ordinance's meaning, however, is readily understandable. It is carefully drawn to include privately owned parking lots similar to the one in

---

[3]The fact that a sign on the lot stated "Unauthorized Vehicles Impounded . . ." does not negate implied consent.

this case and to exclude privately owned land that is not open to the driving public. It is not unconstitutionally vague. *Seattle v. Rice,* 93 Wn.2d 728, 612 P.2d 792 (1980).

■ In a supplemental brief, Tolliver appears to argue that because the officer did not observe any erratic driving, he should not have been charged with drunk driving. That argument is without merit. The officer lawfully inquired about the vine attached to the bumper of Tolliver's car and then discovered that Tolliver was intoxicated. Having just observed Tolliver driving the vehicle, the officer could lawfully arrest him for drunk driving, and the City could charge him with that offense. Seattle Traffic Code 11.56-.010; RCW 10.31.100(2)(d); *State v. Day,* 96 Wn.2d 646, 650 n.5, 638 P.2d 546 (1981).

The supplemental briefing in this case was requested in light of the recent decision in *State v. Day, supra,* in which the Supreme Court held that the state drunk driving law was inapplicable to a vehicle driven on private land far from any roads. Because the opinion in *Day* does not consider an interpretation of a term similar to "way open to the public", it is not apposite. We note, however, the court's implicit recognition of the obvious danger to the public when an intoxicated person is driving in a parking lot at a major municipal intersection. *Day,* at 649–50.

The judgment and sentence on both charges is affirmed.

ANDERSEN, C.J., and DURHAM, J., concur.

Reconsideration denied April 1, 1982.

Review denied by Supreme Court June 11, 1982.