MR. JUSTICE GULBRANDSON
delivered the Opinion of the Court.
Defendant appeals from a judgment of conviction of violating section 61-8-406, MCA. We affirm.
The defendant initially appeared before the justice of the peace in Lincoln County, Montana, on a charge of driving under the influence of alcohol. At that time, he moved the justice court to suppress the results of a breathalyzer test on the grounds that such test was the result of an illegal arrest and therefore inadmissible. The motion was denied, and the justice court, in a bench trial, found the defendant guilty. Defendant appealed this conviction to the District Court and renewed his motion to suppress. The parties agreed that the trial court would rule upon the motion based upon a set of stipulated facts. Ruling thereon, the District Court denied defendant’s motion.
Defendant’s motion to dismiss for lack of speedy trial was also denied, and a jury trial in District Court commenced October 1, 1984. At trial the motion to suppress was again renewed. The six-person jury found the defendant not guilty of driving while under the influence of alcohol, an offense defined by section 61-8-401, MCA, but found the defendant guilty of the offense of operation of a motor vehicle with a blood alcohol concentration of .10 or more, defined in section 61-8-406, MCA. The District Court entered an oral judgment on the jury’s verdict. Defendant waived a pre-sentence report, and *43 the District Court imposed the maximum penalty: 10 days in jail and a $500 fine, plus license revocation. The same day oral judgment was entered, the defendant appealed to this Court. The judgment and execution of sentence was stayed pending the determination of this appeal.
Several days after filing his notice of appeal from the judgment, the defendant filed a statement of record on appeal wherein he stated, pursuant to section 46-20-302, MCA, that because he was only appealing from the trial court’s denial of the pre-trial motion to suppress, which was submitted to that court on stipulated facts alone, he did not intend to order a transcript for appeal. He contends that since the District Court considered the matter on a set of stipulated facts alone, that the same facts control our consideration of the denial of the motion.
The State, in response, argues that the motion was properly granted on the stipulated facts alone, but in the alternative, that other evidence adduced at trial supports the District Court’s order. The defendant renewed his motion at trial, and thus any evidence in the record supporting the District Court’s order should be considered. To that end, the State attached as an appendix a portion of the transcript of the trial where other relevant evidence pertaining to the issue of the stop and arrest of the defendant was produced. We will consider the entire record, including the appendix provided by the State, for two reasons: (1) the defendant has not moved us to strike this evidence from the record; and (2) because of the rule that a ruling denying a motion to suppress is not final and may be reversed at any time, and thus a reviewing court may consider evidence subsequently received during trial. People v. Jones (1983), 114 Ill.App.3d 576, 70 Ill.Dec. 418, 449 N.E.2d 547; People v. Taylor (1981), 99 Ill.App.3d 15, 54 Ill.Dec. 343, 424 N.E.2d 1246. This rule is recognized in Illinois, c.f. People v. Taylor (1971), 50 Ill.2d 136, 277 N.E.2d 878, 881; People v. Schlemm (1980), 82 Ill.App.3d 639, 37 Ill.Dec. 808, 402 N.E.2d 810, from where much of our criminal procedure code is derived. Discussing this rule, the Appellate Court of Illinois, in People v. Schlemm, 402 N.E.2d at 816, observed:
“Had the motion to suppress been denied at the suppression hearing, and had this Court determined that the evidence produced at that hearing did not justify denial of the suppression motion, this Court could consider the evidence introduced at trial to uphold denial of the suppression motion. (People v. Braden 1966, 34 Ill.2d 516, 216 N.E.2d 808) In commenting upon the above doctrine, Pro *44 fessor LaFave has stated: ‘the notion that the trial record may be used by the appellate court to uphold a search or seizure notwithstanding the fact that the lower court erred in failing to suppress on the lesser amount of evidence produced at the pretrial hearing is an attractive one — after all, if it now appears that the fourth amendment was not violated, then why should the defendant be entitled to a windfall reversal of his conviction?’ LaFave, Search and Seizure (1978), Vol. 3, Section 11.7(c), p. 732.”
See also, People v. Hall (1980), 90 Ill.App.3d 1073, 46 Ill.Dec. 479, 414 N.E.2d 201, 203.
The rule stated above does not alter the rule stated in State v. Rader (1978), 177 Mont. 252, 255, 581 P.2d 437, where we noted that “the general rule ... is that when a motion is granted or denied, such becomes the law of the case, and the alleged illegality of the search cannot ordinarily be relitigated.” Rader dealt with a situation where one judge had replaced another on the case. The policies supporting the “law of the case” doctrine do not apply in a situation, such as in the case at bar, where the same judge is on the case for its duration, accord, People v. Taylor (1971), 50 Ill.2d 136, 277 N.E.2d 878. Further, in Rader, we recognized exceptions to the “law of the case” rule. In recognizing these exceptions to that rule, we cited to the annotation at 20 A.L.R.Fed. 13 (1974), which lists one of them as being where new evidence previously unavailable to the court is made known. Under either the Illinois rule stated above, or the Rader rule, we may in these circumstances properly consider the whole record and apply it to appellant’s allegation of error.
Here, the District Court, in considering the motion to suppress was restricted by the parties’ stipulations. Alone, the stipulations provide minimal support for the court’s ruling. Subsequently, though, new evidence not contained in the stipulations was adduced at trial that lends support to the District Court’s order.
From a review of the record, the following appear to be the relevant facts: At 4:10 p.m., December 22,1983, Joyce Hudson, the town clerk of Eureka, Montana, received an anonymous telephone call from a female at the First and Last Chance Saloon, who reported a possible DUI. The caller gave the license number of the vehicle involved, a description thereof, and the direction being traveled by the motor vehicle. Officer Jim Williams of the Montana Highway Patrol was in the office when the call came in. He got into his patrol car and headed north on Highway 93. He soon saw the described vehicle parked halfway off the road pointing in a southerly direction. On *45 pulling around to approach the car from behind, Officer Williams noted skid marks leading to the vehicle, later determined to be 57 feet in length. As Officer Williams pulled up behind the vehicle, it slowly began to pull away. Officer Williams then stopped the vehicle. The driver was Ron Truman. Williams gave Truman a field sobriety test and determined that Truman was not under the influence of alcohol. When he was talking to Truman, Officer Williams noted a passenger in the vehicle, the defendant, Wesley R. Sharp. Officer Williams testified at trial that “[Sharp] was slumped down and looking like he was about halfway passed out. He was obviously either sick or drunk.” Officer Williams then asked Ron Truman whether he had been driving since he had left the bar. Truman told Officer Williams that he had just taken over driving when they were parked there, and that he did so “because Wes was too drunk to drive.” Officer Williams then called back to the dispatcher and had her get ahold of the caller at the First and Last Chance Saloon. The caller was identified as Patty Garris, the bartender at the saloon. She was asked who had been driving the vehicle when it left the bar and answered that it was Wesley Sharp. Officer Williams then gave the defendant Miranda warnings and a field sobriety test. Based on that test, he arrested Sharp for driving while under the influence and took him to the police station, where the breathalyzer test was conducted. The test, given approximately an hour after the arrest, showed that the defendant Sharp had a blood alcohol level of .17 percent.
The defendant alleges that Officer Williams was without authority to stop the defendant’s vehicle because he lacked probable cause to do so. This contention is erroneous. All that is required of an officer in making an investigatory stop is that he have a “particularized” or “reasonable” suspicion that criminal activity may be afoot. This is the applicable standard for an investigative stop of a vehicle; or in other words “some basis from which the court can determine that the detention was not arbitrary or harassing.” State v. Gopher (Mont. 1981), 631 P.2d 293, 295, 38 St.Rep. 1078, 1081, relying on United States v. Cortez (1981), 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d. 621. Here, Officer Williams had a sufficient basis for his particularized suspicion of illegal activity. A citizen had just called the police to report a possible DUI offense and had given the police dispatcher the car’s license plate number and description and the direction of travel. These facts were corroborated when Officer Williams found the described vehicle going in the direction and on the *46 highway reported by the telephone caller. When Williams came upon the automobile, it was stopped halfway off the roadway and began to pull away when he approached. Officer Williams noticed skid marks coming from the vehicle. He had a right at that time, based on reasonable suspicion and logical inference, to stop the defendant’s vehicle to investigate a possible crime.
Appellant emphasizes the fact that the initial tip was given by an anonymous informant. Aside from the fact that all of the information given by the informant was corroborated at the scene, we also note that when information is provided by a “citizen informant” that information is considered presumptively reliable. See State v. Kelly (Mont. 1983), [205 Mont. 417,] 668 P.2d 1032, 1043, 40 St.Rep. 1400, 1411; State v. Liestiko (1978), 176 Mont. 434, 439, 578 P.2d 1161, 1164; and 1 LaFave Search and Seizure Sections 3.3 and 3.4, (1978).
Alternatively, appellant argues that once Officer Williams determined that Ron Truman, the driver of the vehicle at the time of the stop, was not under the influence, that the scope of the permissible investigatory stop was ended and that anything that occurred thereafter was impermissible. This contention is also not persuasive. A founded suspicion to stop for investigative detention may ripen into probable cause to arrest through the occurrence of facts or incidents after the stop. United States v. Medina-Gasca (9th Cir. 1984), 739 F.2d 1451, 1453; United States v. Portillo-Reyes (9th Cir. 1975), 529 F.2d 844, 850. Here, Officer Williams, after running a field sobriety test on Ron Truman, observed the passenger Wesley Sharp in the vehicle slouched over and apparently intoxicated. Based on that observation, Officer Williams inquired further. In response to the officer’s questions, Ron Truman stated that the two had just switched places and that they did so because Sharp was “too drunk to drive.” To further corroborate this, Officer Williams went back to the squad car and had the dispatcher call the First and Last Chance Saloon. The informant, then identified, stated that Wesley Sharp was driving the car when it left the saloon. At that time, Officer Williams’ investigation had produced facts that ripened into the probable cause to arrest Wesley Sharp. He did so, gave Sharp his Miranda warnings, and brought him to the stationhouse, where the breathalyzer test was administered. Clearly, in this case Officer Williams was simply investigating an alleged criminal activity and using all of his facilities to determine what had occurred. That was his job, and his duty. We do not find appellant’s argument *47 persuasive. An investigation or investigatory stop is guided by principles of reasonableness. Effective law enforcement requires some latitude to be given to investigating officers to react to and follow up on their observations. Drawing artificial distinctions or “time lines” in situations such as these does not comport with reality or common sense. All that is required, as stated above, is that the officer had some articulable, or particularized suspicion that criminal activity was afoot; in other words, that the particular investigation or stop was not solely arbitrary or for the purposes of harassment. As long as the scope and duration of that investigation stays within these parameters, we have no difficulty with upholding such an investigation and any evidence of criminal activity adduced therefrom.
Justice Sheehy, in his dissent, has raised various issues and has expressed his opinion of the handling of this case in the District Court and this Court.
It is my opinion that defense counsel, both having excellent reputations, chose to present this appeal solely on the issue of the validity of the order refusing to suppress the breathalyzer test results. No transcript was submitted, so it is not possible to determine the extent of participation by the defense in the settlement of jury instructions, submission of the special verdict form, or in the examination of witnesses. Therefore the opinion has been restricted to the issue presented on appeal.
Based on the foregoing reasons, the order of the District Court denying the defendant’s motion to suppress the results of the breathalyzer test, and the judgment, are affirmed.
MR. CHIEF JUSTICE TURNAGE and MR. JUSTICES HARRISON, MORRISON and WEBER concur.