No. 86-205

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

RONALD ELLINGER,

Defendant and Appellant.

APPEAL FROM: District Court of the Fourteenth Judicial District,
In and for the County of Musselshell,
The Honorable Roy Rodeghiero, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Christopher P. Thimsen, Billings, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Joe R. Roberts, Asst. Attorney General, Helena
John L. Pratt, County Attorney, Roundup, Montana

Submitted on Briefs: July 17, 1986

Decided: October 2, 1986

Filed: OCT 2 - 1986

_____
Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Ronald Ellinger appeals from a conviction of driving while under the influence of alcohol, following a bench trial in the Fourteenth Judicial District Court, Musselshell County, on January 30, 1986. Ellinger was sentenced to twenty-four hours in jail and fined $310.

We affirm.

Defendant Ellinger raises two issues for our review:

1. Was the arrest valid?

2. If the arrest was not valid, should the charges be dismissed?

At 7:00 p.m. on August 30, 1985, the Musselshell County sheriff's office received a call from a citizen, who reported a truck being driven in a reckless manner south of Roundup on U. S. 87. The caller said the driver traveled in the wrong lane, nearly caused an accident, and appeared intoxicated. Undersheriff Floyd Fisher received a complete description of the truck and license plate number. He drove to defendant Ronald Ellinger's residence, after discovering that the suspect vehicle was registered to Ellinger. The vehicle was parked in defendant's driveway.

The defendant stepped outside his mobile home and leaned against the doorway, while Undersheriff Fisher remained on the walkway outside the home. Defendant was having trouble keeping his balance. Undersheriff Fisher explained that he was investigating the caller's report and asked if defendant had been drinking. After first denying any drinking, defendant then admitted that he had been drinking and driving. The undersheriff asked the defendant to perform two field sobriety tests. The defendant agreed and failed the

tests. Undersheriff Fisher arrested defendant at 7:34 p.m., informed defendant of his Miranda rights, and transported the defendant to the Roundup sheriff's office.

At the sheriff's office, the defendant was videotaped, given a breathalyzer test and given two more field sobriety tests. One hour following the phone call, defendant's blood alcohol level was .22. Based on this evidence, defendant was convicted of driving while under the influence of alcohol, in violation of § 61-8-401, MCA. The court fined defendant $310 and sentenced him to sixty days in the county jail with fifty-nine days suspended. Defendant appeals, claiming the evidence was obtained pursuant to an illegal arrest.

Issue No. 1

Was the arrest valid?

A. The citizen's report and defendant's admissions provided probable cause for the arrest.

The threshold issue for the validity of an arrest is probable cause. The probable cause requirement is satisfied at the time of arrest if the facts and circumstances within the officer's personal knowledge, or upon information imparted to him by a reliable source, are sufficient to warrant a reasonable person to believe that the suspect has committed an offense. State v. Hamilton (1980), 185 Mont. 522, 528, 605 P.2d 1121, 1125, citing State v. Hill (1976), 170 Mont. 71, 74, 550 P.2d 390, 392.

Undersheriff Fisher had reasonable grounds to suspect that defendant had committed a crime. The sheriff's office received information from an eyewitness to defendant's erratic driving. The office dispatched Undersheriff Fisher with a complete description of the truck, its license plate number,

and its owner. In State v. Sharp (Mont. 1985), 702 P.2d 959, 962, 42 St.Rep. 1009, 1013, this Court held that when information is provided by a citizen informant, such information is presumed to be reliable. In Sharp, the defendant was arrested for driving while under the influence of alcohol, after a citizen reported the erratic driving, complete with a vehicle description and license number. If an officer receives a tip from a reliable informant which includes a complete vehicle description, then the officer has a particularized reason to question a suspect. Sharp, 702 P.2d at 962.

The scope of arrests has been broadened to allow an arrest for a past misdemeanor not committed in the officer's presence. Section 46-6-401(1), MCA, states: "A peace officer may arrest when: . . . (d) he believes on reasonable grounds that the person is committing an offense or that the person has committed an offense and the existing circumstances require his immediate arrest." (Emphasis added.) In this case, the preservation of defendant's evanescent blood alcohol required immediate arrest.

At a minimum, the citizen's report provided probable cause to investigate. Upon investigation, defendant voluntarily stepped outside his trailer. He appeared intoxicated and leaned against the door. He admitted drinking and driving. Defendant voluntarily took the field sobriety tests and failed. The citizen's tip, defendant's own admissions, and his personal observations gave Undersheriff Fisher full probable cause to arrest.

4

B.  Defendant had a reduced expectation of privacy on his walkway.

Defendant cites only one case on appeal, Welsh v. Wisconsin (1984), 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732.  In Welsh, a police officer responded to a report of a nighttime accident.  Upon arrival at the scene, the officer found defendant's car in the ditch.  A witness told the officer that defendant had left, but had appeared either very sick or very inebriated.  After finding that the vehicle was registered to the defendant, the police proceeded to the defendant's home without a warrant.  The police arrested Welsh for a first offense of driving while under the influence of an intoxicant, which was a noncriminal civil offense, and for which no imprisonment was possible.  The Welsh court held that the warrantless, nighttime entry into the defendant's house to arrest him for a nonjailable traffic offense was prohibited by the Fourth Amendment.  Welsh, 466 U.S. at 754, 104 S.Ct. at 2100, 80 L.Ed.2d at 746.  Defendant claims Welsh is analogous to the immediate case.  However, Welsh is distinguishable on several key points.

First, Undersheriff Fisher never entered defendant's house.  He remained on the walkway outside defendant's mobile home.  In uncontested testimony, Undersheriff Fisher stated that the sobriety tests were "done outside the house on this walkway."  The court in Welsh emphasized that "the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed."  Welsh, 466 U.S. at 748, 104 S.Ct. at 2097, 80 L.Ed.2d at 742, citing United States v. United States District Court (1972), 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752, 764.  Defendant Ellinger's outside walkway did not have the same private

5

sanctity as the interior of his house. Therefore, Ellinger had a reduced expectation of privacy when he stepped outside of his house.

Second, in Welsh, the arrest occurred at night, Welsh was nude, and he was wakened from sleep. In the immediate case, the time of arrest was August 30 at 7:34 p.m., defendant was fully clothed, standing outside his house and responding to the officer's questions. Defense counsel attempts to invalidate the arrest by characterizing 7:34 p.m. as "night."

We note § 46-6-105, MCA:

> An arrest may be made on any day and at any time of the day or night, except that a person cannot be arrested in his home or private dwelling place at night for a misdemeanor committed at some other time and place unless upon the direction of a magistrate endorsed upon a warrant of arrest. [Emphasis added.]

When viewed in a light most favorable to defendant, 7:34 p.m. on August 30 might be considered twilight, but certainly not "night." Furthermore, defendant was not arrested in his home or dwelling place but on his walkway. Therefore, defendant's arrest did not violate the constraints of the statute.

Third, in Welsh, the defendant was charged with driving under the influence of alcohol, which was a nonjailable civil offense in Wisconsin. Welsh, 466 U.S. at 754, 104 S.Ct. at 2100, 80 L.Ed.2d at 746. However, defendant Ellinger was arrested for the criminal offense of driving while under the influence of alcohol, where the penalty for a first offense is a mandatory twenty-four hours imprisonment and up to a $500 fine. The nature of the offense is a factor in the defendant's privacy expectation.

6

In summary, an evaluation of the totality of the circumstances determines whether an individual had a reasonable expectation of privacy in the invaded place. Rawlings v. Kentucky (1980), 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633, 641. Welsh is distinguished on the facts. Defendant's arrest for a criminal offense neither occurred in the defendant's house nor at night. Therefore, defendant Ellinger's expectations of privacy were not violated.


C. Defendant's consent and evanescent blood alcohol removed the warrant requirement from the arrest.

Section 46-5-103, MCA, states: "No search and seizure, whether with or without warrant, shall be held to be illegal as to a defendant if: (1) the defendant has disclaimed any right to or interest in the place or object searched or the instruments, articles, or things seized. . . ."

Defendant consented to the pre-arrest investigation. The police may conduct a valid warrantless search if they have a voluntary and intelligent consent to do so. Knowledge of the right to withhold consent, while a factor to be considered, is not a prerequisite to establishing a voluntary and intelligent consent. The police do not have to warn a person of the right to withhold consent. Schneckloth v. Bustamonte (1973), 412 U.S. 218, 227, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854, 863. The voluntariness is viewed under the totality of the circumstances. State v. Stemple (1982), 198 Mont. 409, 412-413, 646 P.2d 539, 541. Officer Fisher entered the premises upon probable cause to investigate the citizen's report. He personally observed defendant acting in an intoxicated manner. He asked defendant to take the sobriety tests, and defendant voluntarily consented. Before being

7

placed in custody, defendant freely admitted that he had been drinking and driving.

Although defense counsel failed to raise the issue at trial, defendant alleges in his appeal that his admissions were made without Miranda warnings and are, therefore, inadmissible. However, Miranda only applies to custodial interrogation. Miranda v. Arizona (1966), 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706. An interrogation will not be considered custodial if the individual is free to leave. Berkemer v. McCarty (1984), 468 U.S. 420, 440, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317, 335. When a defendant is the focus of an investigation, the threshold Miranda question is whether the defendant was significantly deprived of his freedom. State v. Lapp (1983), 202 Mont. 327, 332, 658 P.2d 400, 403. Defendant Ellinger was neither deprived of any freedom, nor in custody, during his admissions and sobriety tests outside his house. Defendant voluntarily left the confines of his house. He answered the undersheriff's questions without objection. Nowhere in the record did defendant indicate that he was unable to withdraw from the conversation, withdraw from the sobriety tests, and retreat into his house. Defendant had multiple opportunities to stop the interrogation and testing, yet freely consented to further proceeding. Therefore, defendant's Miranda rights did not engage until he had been placed in custody. Upon arrest, Undersheriff Fisher informed the defendant of his Miranda rights.

Undersheriff Fisher also sought to preserve the evidence of evanescent alcohol in defendant's blood by administering a breathalyzer test. The nearest test facility was in Roundup, which was seventeen miles away. The undersheriff

8

needed to promptly transport the defendant to the facility because the percentage of alcohol in the blood decreases rapidly with time. Although the Welsh court found no need to make a warrantless arrest to preserve evanescent evidence in a civil case, this Court has held that the police may seize any evidence which is likely to disappear before a warrant can be obtained, such as a blood sample containing alcohol. State v. Deshner (1971), 158 Mont. 188, 193, 489 P.2d 1290, 1293; Schmerber v. California (1966), 384 U.S. 757, 771, 86 S.Ct. 1826, 1836, 16 L.Ed.2d 908, 920.

In conclusion, we hold that the arrest was valid. The undersheriff had probable cause with precise information from a citizen's report. The defendant's expectation of privacy was not violated on the walkway outside his house. The warrantless arrest preserved evanescent evidence.


Issue No. 2

If the arrest was not valid, should the charges have been dismissed?

Defendant claims that his arrest was unlawful and therefore the charges should have been dismissed. However, an unlawful arrest has no impact on subsequent prosecution. This Court has held: "An illegal arrest does not preclude the State from proceeding on a criminal charge against him." State v. Woods (Mont. 1983), 662 P.2d 579, 581, 40 St.Rep. 533, 534. Furthermore, an invalid arrest is not a defense to being convicted of the offense charged. "An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction. . ." Woods, 622 P.2d at 581, 40 St.Rep. at 535, citing United States v. Crews (1980), 445 U.S. 463, 474, 100 S.Ct. 1244,

1251, 63 L.Ed.2d 537, 547.  If, arguendo, the arrest was invalid, the conviction remains supported on the basis of the defendant's admissions and his .22 blood alcohol level.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

10