No. 87-017

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

_____

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

TIMOTHY L. MORRIS,

Defendant and Appellant.

_____

APPEAL FROM: District Court of the Fourth Judicial district,
In and for the County of Missoula,
The Honorable Douglas Harkin, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Michael Sol; Sol & Wolfe, Missoula, Montana
William Dee Morris, Butte, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Kimberly A. Kradolfer, Asst. Atty. General, Helena
Robert Deschamps, III, County Attorney, Missoula,
Montana

_____

Submitted on Briefs:  Oct. 16, 1987

Decided: February 11, 1988

Filed:  FEB 1 1 1988

_Ethel M. Harrison_
_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Mr. Morris appeals his conviction in the Fourth Judicial District, Missoula County, for possession of a dangerous drug in violation of § 45-9-102, MCA.

He presents four issues for review.

1. Did the District Court err in denying defendant's motion to dismiss based upon lack of speedy trial?

2. Did the District Court err in denying defendant's suppression of evidence motions?

3. Did the District Court err when it admitted evidence over defendant's chain of possession objection?

4. Did the District Court err in denying defendant's motion for a new trial?

On March 13, 1985, around 11:30 p.m. in Missoula, Mr. Morris was driving a recently purchased used car. His heater was not working properly so he decided to pull into a shopping center parking lot to fix the heater. He parked underneath a street light, positioned himself under the dashboard, and using a knife and some pliers, began working on his car.

City police officer Jim Neumeyer was patrolling the area that night when he saw the Morris vehicle parked with lights on and engine running. Officer Neumeyer testified at trial that he could see no one in the car so he decided to investigate. The officer expressed his concern that perhaps someone had pulled off the street and had fallen asleep or that a crime might be taking place. As he approached the car, he saw an empty gun holster in the back seat and some knives on the dashboard. He then saw Mr. Morris underneath the dashboard. As a safety measure, Officer Neumeyer pointed his flashlight directly into the eyes of Mr. Morris to momentarily blind him. Mr. Morris was in an awkward position, and as

he rolled out of the car, the officer confronted him with the flashlight and a drawn revolver.

Mr. Morris testified that the officer never identified himself but only shouted, "You'll be dead before you hit the ground. Don't try it. I'll blow your brains out." Officer Neumeyer testified that Mr. Morris had a knife in his hand as he was coming out of the car. For his own safety he drew his revolver and ordered Mr. Morris out of the car. The officer agrees that Mr. Morris immediately assumed a spread-eagle position and volunteered that he had a gun under his jacket. The officer says that he then took possession of the gun, handcuffed Mr. Morris, and performed a brief pat-down search for any other weapons. The officer then arrested Mr. Morris for carrying a concealed weapon.

During the booking procedure at the jail, the jail officer found a vial of white powder inside Mr. Morris' pants pocket. The defendant was charged later that day in justice court with one count of criminal possession of a dangerous drug (felony) and one count of carrying a concealed weapon (misdemeanor).

On March 25, 1985, an amended complaint was filed in justice court adding a second count of criminal possession of a dangerous drug, relating to a separate arrest and search of defendant. This count was dismissed during the trial and is not directly at issue in this appeal. The justice court docket indicates that Mr. Morris requested a preliminary examination on all counts although the court never conducted one.

On August 16, 1985, the State requested leave to file an information in district court. The information was filed that same day. Arraignment was held on September 9, and the omnibus hearing was on November 7. At this time Mr. Morris moved to dismiss for delay in arraignment which motion was

3

denied. The matter eventually went to a jury on June 10, 1986. Mr. Morris was found guilty of one count of possession of a dangerous drug.

I

Did the District Court err in denying defendant's motion to dismiss based upon lack of speedy trial?

The right to speedy trial attaches at the moment a defendant is accused, and that may occur at the time of arrest, at the time of the filing of a complaint or information, or at the time of indictment. State v. Larson (Mont. 1981), 623 P.2d 954, 957-58, 38 St.Rep. 213, 215. Mr. Morris stood accused and his right to speedy trial attached the day he was arrested. We must balance four factors together with any other relevant circumstances to determine whether Mr. Morris' constitutional right to a speedy trial has been violated: length of delay, reason for delay, the defendant's assertion of the right, and prejudice to the defendant. Larson, 623 P.2d at 957.

Mr. Morris was arrested the first time on March 14, 1985, and was tried 453 days later on June 10, 1986. This certainly is enough delay to raise a presumption of prejudice to defendant. State v. Steward (1975), 168 Mont. 385, 543 P.2d 178.

In considering reason for delay, we will deduct the delay attributable to defendant's own actions from the total delay. State v. Grant (Mont. 1987), 738 P.2d 106, 109, 44 St.Rep. 994, 997. The State did not request leave to file an information in district court until August 16, 1985. The arraignment was 24 days after the information was filed, and the omnibus hearing was held 59 days after arraignment. Thus far, 237 days had elapsed since initial arrest. Mr. Morris made several waivers of speedy trial for qualified periods of time. He also made a motion to dismiss due to delay in

4

arraignment and additional consolidated motions. Trial was set for January 1986.

On January 13, the defendant requested a continuance, a transcript, and independent testing of the substance in the vials. The court granted these motions. From the record we understand that Mr. Morris waived speedy trial for a period of time perhaps extending beyond March 1986. He did not initiate or promote transfer of the vials for testing, and they were not tested until late May, several weeks before trial. At a May 5 hearing on the State's motion to set a trial date, the court offered to try the case in May. Defense counsel could not calendar for trial in May, so trial was set for June.

In total, the defendant was responsible for 253 days of delay. This leaves 200 days remaining. The burden of explaining the reason for this delay rests with the State, and the question is whether prosecution was pursued with reasonable diligence. Grant, 738 P.2d at 109. We note a marked lack of diligent prosecution in the present case. The State failed to request leave to file an information until 154 days after the initial arrest. Prior to this time the defendant was afforded no hearing to determine probable cause for the charges against him, and the State offers no sufficient excuse. Another 46 days is attributable to institutional delays. So, we conclude that 154 days of delay directly reflect the prosecution's lack of reasonable diligence.

We now look to the defendant's assertion of his right to speedy trial. On two occasions prior to trial, Mr. Morris moved to dismiss all counts because of lack of speedy trial, once at the omnibus hearing and once on the day before trial. Mr. Morris, somewhat inconsistently with his speedy trial argument, waived speedy trial three times during the process. One month before trial, his attorney indicated a complete

5

waiver. We note however that these waivers were given partially for convenience of the court and its trial calendar, and partially to accommodate the defense. We conclude that Mr. Morris properly asserted his right to speedy trial.

Lastly we consider whether the delay prejudiced Mr. Morris. The burden of showing absence of prejudice rests with the State. Grant, 738 P.2d at 109. The right to speedy trial serves three interests of the defendant: 1) to prevent oppressive pretrial incarceration, 2) to minimize anxiety and concern of the accused, and 3) to limit the possibility that the defense will be impaired. State v. Waters (Mont. 1987), 743 P.2d 617, 620, 44 St.Rep. 1705, 1708. Mr. Morris was out on bond for the entire period after the second arrest so the first interest was protected. Considering the second interest, a certain amount of anxiety and concern is expected when one stands accused, yet Mr. Morris has not alleged excessive anxiety as a result of the delay. As for impairment of the defense, the State argues that the delay did not impair the defendant's case. Mr. Morris alleges that his defense suffered due to the lack of memory of State's witnesses. He presented no witnesses at trial nor does he complain that the delay caused him to lose witnesses. Lack of memory in this instance may weaken the State's case, and indeed the record reflects that one count of possession of dangerous drugs was dismissed, partially as a result of this very problem. However, the lack of memory of State's witnesses does not of itself constitute impairment of the defense. We conclude that the State has sufficiently rebutted the presumption of prejudice to Mr. Morris by the delay.

Of the four factors we have considered, "[n]o single factor is determinative. Each facet of the analysis is weighed in light of the surrounding facts and circumstances." Waters, 743 P.2d at 619. Considering these four factors and

6

the record as a whole, we conclude that the delay did not result in even minimal prejudice. We hold, therefore, that Mr. Morris' right to a speedy trial was not denied. While the facts do not require dismissal, we are seriously disturbed by the unexcused 154 day delay before the State brought Mr. Morris before a court for determination of probable cause and the additional 24 days before arraignment. We emphasize that this type of delay without cause is totally inappropriate. Mr. Morris argues that this delay of itself demands dismissal for lack of speedy trial. This argument fails, however, since we have concluded that Mr. Morris suffered no prejudice by the delay.

II

Did the District Court err in denying defendant's suppression of evidence motions?

Mr. Morris contends that the gun and the alleged drugs are evidence which the court should have suppressed as the result of an illegal arrest. He argues that the arrest was illegal in that the officer lacked probable cause to arrest and failed to comply with stop and frisk requirements.

This Court in State v. Gopher (Mont. 1981), 631 P.2d 293, 296, 38 St.Rep. 1078, 1082, explained the standard for a valid stop and search:

> [W]e now hold that when a trained police officer has a particularized suspicion that the occupant of a vehicle is or has been engaged in criminal activity, or witness thereto, a limited and reasonable investigatory stop and search is justified.

Probable cause is not the standard for a valid stop. Rather, the officer must have a particularized suspicion to justify a stop. We further explained "particularized suspicion" in Gopher, 631 P.2d at 296:

7

> The State's burden has two elements: (1) objective
> data from which an experienced officer can make
> certain inferences; and (2) a resulting suspicion
> that the occupant of a certain vehicle is or has
> been engaged in wrongdoing or was a witness to
> criminal activity.

In this case, an officer of nine years' experience noticed a car parked in an otherwise empty parking lot, sometime around midnight. The engine was running and the headlights were on yet the officer could not see an occupant in the car. The officer then decided he should investigate to determine whether someone was in need of assistance, whether the driver was intoxicated, unconscious, or asleep or whether an individual was in the process of an auto theft or other crime. As he approached, the officer saw an empty gun holster and several knives inside the car. He then saw a man lying under the dashboard of the car. We conclude from these facts that the officer reasonably suspected wrongdoing and reasonably took precautionary measures for his own safety.

At that point, a reasonable investigatory search was justified. Mr. Morris testified that he voluntarily assumed a spread-eagle position and warned the officer that he had a gun under his jacket. The officer had not searched or frisked the defendant's person to this point, and the gun was not the result of a search. The District Court, therefore properly denied suppression of the gun as evidence.

Mr. Morris further complains that Officer Neumeyer did not follow the stop and frisk procedures of § 46-5-402, MCA. The procedures of that statute apply once the officer has lawfully stopped a person and so apply specifically to the "frisk" portion of the process. Once Mr. Morris volunteered the fact that he possessed a gun under his jacket, the officer had probable cause for arrest for possession of a

8

concealed weapon. "A founded suspicion to stop for investigative detention may ripen into probable cause to arrest through the occurrence of facts or incidents after the stop." State v. Sharp (Mont. 1985), 702 P.2d 959, 963, 42 St.Rep. 1009, 1013. The subsequent pat-down at the scene and the search upon booking at the jail were proper and valid searches incident to arrest. Section 46-5-101(1), MCA. We hold that the District Court properly denied defendant's motion to suppress the vial which was found during booking procedures.

Mr. Morris also argues that the officer's actions violated his constitutional right of privacy. The Montana Constitution, Art. II, § 10, provides,

> The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest.

Mr. Morris contends that the officer had no basis for believing that he was involved in criminal activity; therefore, there was no compelling state reason for infringing his privacy. However, we have already concluded that this officer had a particularized suspicion to investigate as required by Gopher. When a trained and experienced officer is confronted with circumstances which that officer believes demand investigation, within the parameters of Gopher, that officer has a duty to investigate.

> Effective law enforcement requires some latitude to be given to investigating officers to react to and follow up on their observations. Drawing artificial distinctions or 'time lines' in situations such as these does not comport with reality or common sense.

9

Sharp, 702 P.2d at 963.   We hold that the District Court properly denied defendant's suppression motion which was based on invasion of privacy.

### III

Did the District Court err when it admitted evidence over defendant's chain of possession objection?

Mr. Morris argues that the chain of possession of Exhibit 2 is flawed in numerous respects.   Exhibit 2 is the vial found during the booking procedure.   This exhibit was admitted into evidence without defense objection.   When the State rested its case, the defense, as part of a motion to dismiss, challenged the chain of possession of the exhibit.   The pertinent portions of the motion appear as follows:

> I could not follow the chain of possession of Exhibit 2. . . . I have had a very difficult time following the chain of possession. . . .   I don't think we can trace the possession of that bottle of amphetamine to Timothy Morris and that jailer, not a deputy, but a jailer not covered by the presumption of regularity of carrying official functions. The jailer found and passed it on and I really couldn't follow the chain of possession.

Other than his concern about the jailer, the defense only generally objected to the exhibit.   Such a general statement as, "I could not follow the chain of possession . . .", does not preserve a valid objection for appeal.   Further, Mr. Morris did not at trial or on appeal cite any authority for his concern that the chain of possession is somehow tainted by the fact that the jailer was a civilian rather than a peace officer.   We hold that the District Court properly overruled Mr. Morris' objection to the chain of possession of Exhibit 2.

10

## IV

Did the District Court err in denying defendant's motion for a new trial?

Mr. Morris bases his motion for new trial on the ground of newly discovered evidence. He indicates that some facts became clear only during trial and after review of the trial transcript. Section 46-16-702(1), MCA, allows the court discretion to grant defendant a new trial "if required in the interest of justice." The Commission Comments to this statute provide in part:

> [Section 46-16-702] does not specify the grounds which may be the basis for a motion for a new trial . . . [It] encompasses the various grounds set forth in the existing Montana law plus it permits the granting of a motion for a new trial for any other reason the court may find to be in the interest of justice. . . .

In State v. Greeno (1959), 135 Mont. 580, 586-87, 342 P.2d 1052, 1055, this Court enumerated certain rules which govern a motion for new trial based on newly discovered evidence. We need consider only the first one: the evidence must have come to the knowledge of the applicant since trial. The granting or denial of a motion for new trial rests within the sound discretion of the trial court. State v. Gallagher (1973), 162 Mont. 155, 164, 509 P.2d 852, 857.

Mr. Morris contends that the State was conducting an undercover operation to locate a "drug factory". As part of this operation, the State put pressure on him because he was suspected to be involved or to have knowledge of the factory. As part of this pressure, he contends, the vial which was "found" on him during booking was actually "planted" on him during arrest. All of the facts upon which Mr. Morris bases his motion were available to him before and during trial. In fact, he argued this conspiracy and undercover operation

11

theory at trial. The only <u>new</u> evidence that Mr. Morris mentions is some exculpatory evidence which the State allegedly has in its hands but refused or failed to turn over to the defense. He cites § 26-1-602(5), MCA, which states it is presumed that "[e]vidence willfully suppressed would be adverse if produced." He argues that the State failed to present evidence to controvert this disputable presumption. However, Mr. Morris produced no evidence indicating that the State was willfully suppressing exculpatory evidence. His allegations of newly discovered evidence simply are unfounded. The District Court, in denying new trial, stated that it believed the defense was aware of the "drug factory implications" prior to trial. We agree with the court. The defense makes only allegations -- the same allegations made at trial. We hold that the District Court exercised sound discretion when it denied Mr. Morris' motion for new trial.

The judgment of the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

12

Mr. Justice John C. Sheehy, specially concurring:


I agree with the results. On the speedy trial issue, the time taken to bring this case to trial was inordinately long. There was no speedy trial here, but I agree with the result because the record demonstrates that Morris really did not want a speedy trial. See Barker v. Wingo (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101.

John C. Sheehy
_____
Justice