NO. 94-174

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

SCOTT A. SANTEE,

       Petitioner and Appellant,

  -vs-

THE STATE OF MONTANA, DEPARTMENT
OF JUSTICE, MOTOR VEHICLE DIVISION,

       Respondent and Respondent.

**FILED**

OCT 2 5 1994

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Sixth Judicial District,
            In and for the County of Park,
            The Honorable Byron L. Robb, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Joseph T. Swindlehurst; Huppert & Swindlehurst,
        Livingston, Montana

    For Respondent:

        Hon. Joseph P. Mazurek, Attorney General,
        Brenda Nordlund, Assistant Attorney General, Helena,
        Montana

        Jon M. Hesse, Park County Deputy Attorney,
        Livingston, Montana

Submitted on Briefs: September 15, 1994

Decided: October 25, 1994

Filed:

_____
Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Scott A. Santee (Santee) appeals an order of the District Court of the Sixth Judicial District, Park County, suspending his driver's license. We affirm.

The issues raised on appeal are:

1. Did the District Court err when it held that the State established reasonable grounds to arrest Santee for Driving Under the Influence?

2. Did the District Court err when it found that the American Bank parking lot is a way of the state open to the public?

At approximately 8:15 p.m. on August 25, 1993, Officer Glen Farrell of the Livingston Police Department was dispatched to investigate a complaint, unrelated to the present case, at the Livingston Bar and Grill. After Officer Farrell investigated the complaint, he was stopped inside the Livingston Bar and Grill by a man who reported that he had seen an extremely intoxicated man walking across the street whom he feared was going to drive away. While Officer Farrell and the witness walked toward Officer Farrell's police car, the witness pointed out Santee as the intoxicated man he had seen earlier. At that time, Santee was walking towards a truck parked in the American Bank parking lot. As Officer Farrell continued toward his patrol car, two women waved him down and said that the individual getting into the truck in the American Bank parking lot was extremely intoxicated and about to drive away.

2

Officer Farrell drove his patrol car to the American Bank parking lot where he stopped Santee. Santee had backed his truck out of his parking spot and was starting to pull forward when Officer Farrell stopped him. Officer Farrell arrested Santee for driving while under the influence of alcohol, a violation of § 61-8-401, MCA. Officer Farrell requested Santee to take a breathalyzer test, but Santee refused. Pursuant to Montana's implied consent law, Officer Farrell confiscated Santee's driver's license. See § 61-8-402, MCA.

On September 2, 1993, Santee petitioned the District Court to determine if his driver's license should be restored. The court set a hearing date for October 12, 1993, and ordered that Santee retain his driver's license and driving privileges prior to its ruling. On October 12, 1993, the District Court heard the parties' arguments. On January 18, 1994, the court entered its order suspending Santee's driver's license for 90 days. From this order, Santee appeals.

I

Did the District Court err when it held that the State established reasonable grounds to arrest Santee for Driving Under the Influence?

Upon notification of suspension of driver's license for refusal to submit to a breath, blood, or urine test to detect the presence of alcohol, the defendant may petition the district court for a hearing to determine whether the suspension is proper. See § 61-8-403, MCA. The issues at the hearing are limited by § 61-8-

3

403, MCA, to:

> (1) whether the arresting officer had <u>reasonable grounds to believe</u> the following:
> (a) that the petitioner had been driving or was in actual physical control of a vehicle:
> (b) that the vehicle was on a way of this State open to the public; and
> (c) that the petitioner was under the influence of alcohol:
> (2) whether the individual was placed under arrest; and
> (3) whether the individual refused to submit to a chemical test.

Jess v. State, Dept. of Justice, MVD (1992), 255 Mont. 254, 258-59, 841 P.2d 1137, 1140; citing Gebhardtv. State (1989), 238 Mont. 90, 95, 775 P.2d 1261, 1265. The hearing is a civil proceeding, and the petitioner has the burden of proving that the State's actions were invalid, rather than requiring the State to justify its act of revocation. Jess, 841 P.2d at 1140.

We have determined that for an arrest to be valid, an officer must have probable cause to make an arrest. Jess, 841 P.2d at 1141. We have stated that probable cause is analyzed by determining "if at the time of the arrest the facts and circumstances within the officer's personal knowledge, or upon information imparted to him by a reliable source, are sufficient to warrant a reasonable person to believe that the suspect has committed an offense." Jess, 841 P.2d at 1141; citing State v. Ellinger (1986), 223 Mont. 349, 352, 725 P.2d 1201, 1202.

Santee contends that Officer Farrell did not have probable cause since there was no evidence presented at the hearing that Officer Farrell corroborated reports that Santee was intoxicated. In support of this proposition, Santee cites State v. Lee (1988),

4

232 Mont. 105, 754 P.2d 512, and State v. Sharp (1985), 217 Mont. 40, 702 P.2d 959. In Lee, an officer called for assistance after he pulled two vehicles over and suspected that Lee, the driver of the second vehicle, was intoxicated. A second officer (Officer Grimstad) arrived, performed sobriety tests on Lee, and arrested him for driving under the influence. Lee, 754 P.2d at 513. Lee argued that Officer Grimstad did not have probable cause to arrest him. We held that Officer Grimstad had probable cause because: 1) after performing the sobriety tests, Officer Grimstad personally knew that Lee was intoxicated; and 2) Officer Grimstad obtained knowledge that Lee was driving from a reliable source (the first officer), and this information was corroborated by Lee, who admitted that he had been driving. Lee, 754 P.2d at 515.

In Sharp, an anonymous caller informed the highway patrol that an intoxicated person had driven away from a local bar. The caller gave a description of the vehicle, its license number, and the direction it was travelling. When the responding officer discovered the car stopped in the road with 57 feet of skidmarks behind the car, it started to pull away so the officer pulled the car over. The officer gave the driver a field sobriety test which the driver passed. The officer noticed that Sharp, the passenger, appeared intoxicated. The driver said that he had just taken over the driving for Sharp before the officer stopped the car. The officer contacted the anonymous caller who then identified herself and stated that Sharp was the intoxicated person driving the vehicle when it left the bar. Sharp, 702 P.2d at 962.

5

We held that the officer had a reasonable suspicion to pull the car over because it matched the informant's description and was travelling in the direction reported by the informant. Sharp, 702 P.2d at 962. Sharp argued that the officer did not have probable cause to continue his investigation after he performed the initial sobriety tests on the driver. We held that the officer had probable cause to arrest Sharp because: 1) the officer observed Sharp in an apparently intoxicated state: and 2) the driver stated that Sharp had been driving, and his statement was corroborated by the caller's report that Sharp was driving the vehicle when it left the bar. Sharp, 702 P.2d at 963.

Both Lee and Sharp demonstrate that some facts necessary to establish probable cause may come from sources other than the arresting officer and may be corroborated by information from individuals other than the arresting officer. Lee e , 754 P.2d at 515; Sharp, 702 P.2d at 963. In the present case, Officer Farrell received reports from three witnesses that an individual was extremely intoxicated, and they were afraid he would drive in this condition. The information reported by the first citizen informant, that Santee was extremely intoxicated, was corroborated by the other two citizen informants who also informed Officer Farrell that Santee was extremely intoxicated. In addition, all three witnesses were in Officer Farrell's presence when they indicated that Santee was the intoxicated individual. Information provided by citizen informants is considered presumptively reliable. Jess, 841 P.2d at 1141; citing Sharp, 702 P.2d at 962.

6

Officer Farrell testified that he further investigated by driving to the American Bank parking lot, where Santee pulled out of his parking spot and was about to pull forward into the alley.

Facts and circumstances within Officer Farrell's personal knowledge (that Santee was in control of his truck in the American Bank parking lot), and facts imparted to him by the three citizen informants (that Santee was intoxicated), were sufficient to warrant a reasonable person to believe that Santee was driving while under the influence of alcohol. Thus, Officer Farrell had probable cause to arrest Santee for that offense. We hold that the **District** Court did not err in concluding that Officer Farrell had reasonable grounds to arrest Santee.

II

Did the District Court err when it found that the American Bank parking lot is a way of the state open to the public?

Montana's implied consent law states in relevant part:

> (1) Any person who operates or is in actual physical control of a vehicle upon ways of this state open to the public shall be deemed to have given consent, subject to the provisions of 61-8-401, to a test of his blood, breath, or urine for the purpose of determining any measured amount or detected presence of alcohol in his body if arrested by a peace officer for driving or for being in actual physical control of a vehicle while under the influence of alcohol, drugs, or a combination of the two.

**Section 61-8-402(1),** MCA (1991). Santee was stopped after backing out of his parking space in the American Bank parking lot. He contends that the American Bank parking lot is not a way open to the public, thus he was not subject to the provisions of the implied consent law.

7

A Montana statute defines "ways of this state open to the public" as "any highway, road, alley, lane, parking area, or other public or private place adapted and fitted for public travel that is in common use by the public." Section 61-8-101(1), MCA. We examined this statute in City of Billings v. Peete (1986), 224 Mont. 158, 729 P.2d 1268. In Peete, we recognized that § 61-8-101(1), MCA, was patterned after Seattle Traffic Code §§ 11.12.1020 and 11.12.715. Peete, 729 P.2d at 1269. We relied on Washington courts' interpretations of the Seattle code in determining that the Northern Hotel's parking garage in Billings was a way of the state open to the public. Peete, 729 P.2d at 1270-71.

Santee contends that Peete is distinguishable because the Northern Hotel parking garage was open to every member of the public who paid a fee to park there, whereas the American Bank parking lot was restricted to bank employees and bank customers. A Washington case interpreting Seattle's traffic code is again instructive. In City of Seattle v. Tolliver (Wash. Ct. App. 1982), 641 P.2d 719, 721-22, the Washington Court of Appeals determined that a private parking lot, posted with signs declaring that unauthorized vehicles would be impounded, constituted a way open to the public since the lot was accessible to busy intersections, and the lot was often used, without authorization, by patrons of nearby taverns. Santee claims that Tolliver is distinguishable because it is not clear whether the parking lot in that case was a parking lot for hire or strictly a private lot. This distinction is unpersuasive as applied to the present case.

8

Here, the American Bank parking lot is posted with signs stating that it is a private lot and violators will be towed. Testimony revealed that the lot is commonly used by members of the public who are patrons of nearby taverns rather than bank customers. The only access to the lot is by an alley, but this alley and the American Bank parking lot are in the middle of an active Livingston business district. We hold that the American Bank parking lot is a parking area fitted for public travel and in common use by the public. Therefore, it is within the definition of "ways open to the public" contained in §§ 61-8-101(1), MCA, and 61-8-402(1), MCA. We hold that the District Court did not err in determining that the American Bank parking lot is a way of the state open to the public.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices