IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 124,607

STATE OF KANSAS,
*Appellee*,

v.

MILES LOREN MARTIN,
*Appellant*.

SYLLABUS BY THE COURT

1.

The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and section 10 of the Kansas Constitution Bill of Rights prohibit a court from imposing multiple punishments under different statutes for the same conduct in the same proceeding when the Legislature did not intend multiple punishments.

2.

When a defendant brings a double jeopardy challenge based on multiple punishments imposed in one case, courts conduct a two-part test to determine whether the convictions giving rise to those punishments are for the same offense. First, courts consider whether the convictions arose from unitary conduct. Second, courts consider whether by statutory definition there are two crimes or only one. In cases involving convictions under different statutes, this second part of the analysis requires courts to apply what has been called the "same-elements test." Under that test, courts consider if each statute requires proof of an element not necessary to prove the other offense.

1

3.

In K.S.A. 2019 Supp. 21-5109(b), the Kansas Legislature has identified a specific circumstance in which it did not intend multiple punishments. Under the statute, a defendant cannot be convicted of (and thus punished for) both the crime charged and a lesser included crime arising from the same conduct in the same prosecution.

4.

To be a lesser included crime under K.S.A. 2019 Supp. 21-5109(b)(2), a crime must be a "lesser" crime than the crime charged—meaning it carries a lesser penalty. And that "lesser" crime must also be "included" in the crime charged—meaning all elements of the lesser crime must be identical to some elements of the crime charged.

5.

Possession of methamphetamine is not a lesser included crime of no drug-tax stamp under K.S.A. 2019 Supp. 21-5109(b)(2) because the former carries a greater penalty than the latter.

6.

The crime of failing to affix a drug-tax stamp is not a lesser included crime of possession of methamphetamine under K.S.A. 2019 Supp. 21-5109(b)(2) because not all elements of the former are identical to some elements of the latter.

7.

Under a Fifth Amendment double jeopardy analysis, the same-elements test is a rule of statutory construction, and the rule should not be controlling where there is a clear indication of contrary legislative intent. In determining whether there is contrary legislative intent, courts consider factors such as the language, structure, and legislative history of the statutes as well as the social evil each statute seeks to address.

2

8.

Based on the targeted conduct and objectives of the statutory offenses of possession of methamphetamine and failure to affix a drug-tax stamp, as well as the language and structure of the relevant statutes, the Legislature intended to impose multiple punishments under the different statutes.

9.

A warrantless search is presumptively unreasonable under the Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights unless the search falls within a recognized exception to the warrant requirement. Those recognized exceptions are: consent; search incident to a lawful arrest; stop and frisk; probable cause plus exigent circumstances; the emergency doctrine; inventory searches; plain view or feel; and administrative searches of closely regulated businesses.

10.

Incident to a lawful arrest, an arresting officer may search the arrestee's person and the area within the arrestee's immediate control, including personal property immediately associated with the person of the arrestee.

11.

A warrantless search preceding an arrest is a valid search incident to arrest if (1) a legitimate basis for the arrest existed before the search, and (2) the arrest followed shortly after the search.

12.

When reviewing a district court's ruling denying a pretrial motion to suppress, an appellate court may consider both the evidence presented at the suppression hearing and the evidence adduced at trial.

Review of the judgment of the Court of Appeals in an unpublished opinion filed March 17, 2023. Appeal from Geary District Court; COURTNEY D. BOEHM and RYAN W. ROSAUER, judges. Opinion filed March 15, 2024. Oral argument held November 14, 2023. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, argued the cause, and *Bryan W. Cox*, of the same office, was on the brief for appellant.

*Kristafer Ailslieger*, deputy solicitor general, argued the cause, and *Tony Cruz*, assistant county attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

WALL, J.: This appeal raises two constitutional challenges: one implicating the Double Jeopardy Clauses of the United States and Kansas Constitutions and the other implicating the government's search and seizure authority under the Fourth Amendment.

The Double Jeopardy Clauses of the United States and Kansas Constitutions protect our citizens from twice being placed in jeopardy of losing their liberty for the same offense. Among other applications, these constitutional safeguards can protect a citizen from multiple punishments under different statutes for the same conduct, unless the Legislature intended to impose multiple punishments under the circumstances. We often refer to this application of the Double Jeopardy Clause as a "multiplicity" challenge.

The Legislature enacted K.S.A. 2019 Supp. 21-5109 to identify some situations in which it does not intend to impose multiple punishments for the same conduct. Most relevant to this appeal, the statute provides that a defendant cannot be convicted of (and thus punished for) both a charged crime and a lesser included crime. K.S.A. 2019 Supp.

4

21-5109(b). The statute defines a "lesser included crime" to include "a crime where all elements of the *lesser crime* are identical to some of the elements of the crime charged." (Emphasis added.) K.S.A. 2019 Supp. 21-5109(b)(2).

Miles Loren Martin was convicted of two offenses—possession of methamphetamine and possession of a controlled substance with no drug-tax stamp—after a police officer found him in possession of 17.51 grams of methamphetamine during a traffic stop. Martin argues his convictions violate K.S.A. 2019 Supp. 21-5109(b)(2), thus placing him in double jeopardy, because all elements of possession of methamphetamine are the same as some elements of no drug-tax stamp.

However, to be a lesser included crime under K.S.A. 2019 Supp. 21-5109(b)(2), a crime must be a "lesser" crime than the crime charged—meaning it carries a lesser penalty. And that "lesser" crime must also be "included" in the crime charged—meaning all elements of the lesser crime must be identical to some elements of the crime charged. Martin's convictions do not violate K.S.A. 2019 Supp. 21-5109(b)(2) because possession of methamphetamine (the alleged lesser crime) carries a greater penalty than the offense of no drug-tax stamp (the charged crime).

This does not completely resolve Martin's double-jeopardy challenge—it simply means the Legislature did not prohibit multiple punishments under K.S.A. 2019 Supp. 21-5109(b)(2). We must also examine the statutory offenses of possession of methamphetamine and possession of a controlled substance without a drug-tax stamp to determine whether the Legislature intended to punish Martin for both crimes. We conclude that the language and structure of the relevant statutes, as well as their targeted conduct, show the Legislature intended to impose multiple punishments. Thus, Martin's convictions and sentences do not violate double jeopardy.

5

Martin also challenges the lawfulness of the warrantless search that led to the discovery of methamphetamine. The officer found the methamphetamine in a pill bottle Martin had been carrying in his pocket, but she conducted that search before his arrest. Nevertheless, the search falls within the search-incident-to-arrest exception to the warrant requirement because the officer had a legitimate basis to arrest Martin before the search and his arrest followed soon after the search. In reaching this conclusion, we also hold that an appellate court may consider both evidence presented at a suppression hearing and evidence adduced at trial when reviewing a district court's order denying a pretrial motion to suppress. Finally, we conclude that the search of the pill bottle did not exceed the permissible scope of a search incident to arrest as delineated by United States Supreme Court precedent. We thus affirm Martin's convictions and sentence.

FACTS AND PROCEDURAL BACKGROUND

After stopping Martin for a defective tag light, Detective Cayla Da Giau caught sight of an open container of alcohol in the backseat of Martin's car. Da Giau asked Martin to get out of the car so she could search it. She found several open containers of alcohol, a straw with white residue on it, and a butane lighter.

Detective Da Giau then overheard Martin complaining to a backup officer about the heat. Da Giau offered to let Martin sit in her air-conditioned patrol car. But before placing Martin in the car, she asked if he had anything on him. He handed her a pill bottle. After getting Martin comfortable, Da Giau opened the bottle and found 17.51 grams of methamphetamine.

The State charged Martin with possession of methamphetamine with the intent to distribute within 1,000 feet of a school zone and possession of a controlled substance with no drug-tax stamp. Before trial, Martin moved to suppress the methamphetamine found in the pill bottle, but the district court denied his motion.

6

A jury convicted Martin of possession of methamphetamine as a lesser included offense of possession of methamphetamine with intent to distribute within 1,000 feet of a school zone. The jury also convicted Martin of possession of methamphetamine without a drug-tax stamp. The district court sentenced Martin to 20 months in prison for possession of methamphetamine and 6 months in prison for no drug-tax stamp. The district court ordered the sentences to run concurrently.

Martin appealed, arguing that (1) his convictions for possession of methamphetamine and no drug-tax stamp were multiplicitous in violation of K.S.A. 2019 Supp. 21-5109(b)(2); and (2) the district court erred by denying his motion to suppress. The Court of Appeals affirmed Martin's convictions and sentences for both crimes. *State v. Martin*, No. 124,607, 2023 WL 2558563, at *6 (Kan. App. 2023) (unpublished opinion).

We granted Martin's petition for review, and we heard oral argument on November 14, 2023. Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

ANALYSIS

I. *Martin's Convictions for Possession of Methamphetamine and No Drug-Tax Stamp Are Not Multiplicitous in Violation of Kansas Statute and the Double Jeopardy Clauses of the Federal and State Constitutions*

First, Martin argues his convictions for possession of methamphetamine and no drug-tax stamp are multiplicitous. "[M]ultiplicity is the charging of a single offense in several counts of a complaint or information." *State v. Thompson*, 287 Kan. 238, 244, 200 P.3d 22 (2009). And multiplicitous convictions implicate constitutional double-jeopardy protections against multiple punishments for the same offense. 287 Kan. at 244.

7

While Martin invokes the Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and section 10 of the Kansas Constitution Bill of Rights, he mainly bases his argument on a state statute, K.S.A. 2019 Supp. 21-5109(b)(2). That statute prohibits convictions for both a charged crime and a lesser included crime. K.S.A. 2019 Supp. 21-5109(b). In other words, under the statute, a charged crime and its lesser included crimes are the "same offense" for multiplicity purposes. The statute defines lesser included crimes to include "a crime where all elements of the lesser crime are identical to some of the elements of the crime charged." K.S.A. 2019 Supp. 21-5109(b)(2).

Martin contends possession of methamphetamine is a lesser included offense of no drug-tax stamp under K.S.A. 2019 Supp. 21-5109(b)(2) because all elements of the former are identical to some elements of the latter. As a result, he argues his convictions and sentences for possession of methamphetamine and no drug-tax stamp are for the same offense, and thus they violate statutory and constitutional protections against multiplicity.

The State contends possession of methamphetamine is not a lesser included crime of no drug-tax stamp under K.S.A. 2019 Supp. 21-5109(b)(2). The State does not contest that all elements of possession of methamphetamine are identical to some elements of no drug-tax stamp. Instead, the State's argument turns on the phrase "lesser crime" as used in subsection (b)(2). According to the State's reading of the statute, a "lesser crime" is a crime with a lesser penalty than the charged offense. Thus, to be a lesser included crime under K.S.A. 2019 Supp. 21-5109(b)(2), the State argues a crime must have a lesser penalty than the charged crime *and* all elements of the crime must be the same as some elements of the charged crime. Possession of methamphetamine would fail to meet the State's definition of a "lesser crime" because it carries a greater penalty than no drug-tax stamp.

8

Though it did not engage in a developed statutory interpretation of K.S.A. 2019 Supp. 21-5109(b)(2), the Court of Appeals sided with the State. It held in conclusory fashion that possession of methamphetamine was not a "lesser crime" of no drug-tax stamp because it carried a greater penalty, and thus did not meet the definition of a lesser included offense under K.S.A. 2019 Supp. 21-5109(b)(2). *Martin*, 2023 WL 2558563, at *6. The panel also held that no drug-tax stamp did not meet the definition of a lesser included offense under K.S.A. 2019 Supp. 21-5109(b)(2) because that offense has elements not included in the crime of possession of methamphetamine. 2023 WL 2558563, at *6. Thus, the panel rejected Martin's multiplicity challenge. 2023 WL 2558563, at *6.

On review, Martin argues the panel erred when it considered the penalties for possession of methamphetamine and no drug-tax stamp in determining whether the former is a lesser included offense of the latter under K.S.A. 2019 Supp. 21-5109(b)(2). According to Martin, the statute defines lesser included crimes only in terms of the elements of the concerned offenses and not their respective penalties, and thus the term "lesser crime" simply means "a crime with fewer elements."

To analyze Martin's claim, we first review the relevant law regarding multiplicity and double jeopardy. We then consider whether Martin's convictions are multiplicitous under K.S.A. 2019 Supp. 21-5109(b)(2). This will require us to interpret the term "lesser crime" as used in that subsection. After concluding that the term "lesser crime" means a crime with a lesser penalty, we hold that Martin's convictions are not multiplicitous under the statute. Finally, we consider whether the Legislature intended to punish Martin for both offenses (possession of methamphetamine and no drug-tax stamp) even though neither offense is a lesser included offense of the other under K.S.A. 2019 Supp. 21-

9

5109(b)(2). Ultimately, we hold that the Legislature intended to impose multiple punishments and Martin's convictions are not multiplicitous in violation of federal and state constitutional protections against double jeopardy.

A. *Standard of Review and Relevant Legal Framework*

We exercise unlimited review over double-jeopardy and multiplicity challenges. *State v. Hensley*, 298 Kan. 422, 435, 313 P.3d 814 (2013). Likewise, we exercise unlimited review over any questions of statutory interpretation necessary to resolve these challenges. *State v. Hirsh*, 310 Kan. 321, 338, 446 P.3d 472 (2019).

The Double Jeopardy Clauses of the United States and Kansas Constitutions prohibit a criminal defendant from being "twice put in jeopardy." U.S. Const. amend. V; Kan. Const. Bill of Rights, § 10; see also *State v. Miller*, 293 Kan. 535, 544, 264 P.3d 461 (2011) (double-jeopardy provisions of federal and state Constitutions equal in scope and protection). In part, these clauses protect against multiple punishments for the same offense. *State v. Schoonover*, 281 Kan. 453, 463, 474, 133 P.3d 48 (2006). More specific to this case, they "prohibit a court from imposing multiple punishments under different statutes for the same conduct in the same proceeding when the legislature did not intend multiple punishments." *Hensley*, 298 Kan. at 435. Multiplicity implicates these double-jeopardy protections because it creates the potential for multiple punishments for the same offense. *Thompson*, 287 Kan. at 244.

When a defendant brings a double-jeopardy challenge based on multiple punishments imposed in one case, the overarching question is whether the convictions giving rise to those punishments are for the same offense. *Schoonover*, 281 Kan. at 496. In *Schoonover*, we identified a two-part analysis to answer this question. First, courts consider whether the convictions arose from unitary conduct. Second, courts consider whether by statutory definition there are two crimes or only one. 281 Kan. 453, Syl. ¶ 15.

10

In cases involving convictions under different statutes, this second part of the analysis requires courts to apply what has been called the "same-elements test." Under that test, courts consider if each statute requires proof of an element not necessary to prove the other offense. 281 Kan. 453, Syl. ¶¶ 12, 15.

The same-elements test, however, "is merely a rule of construction that courts use to divine legislative intent." *Hensley*, 298 Kan. at 435; see also *Schoonover*, 281 Kan. at 504. That is, if one statute shares all its elements with another, it creates a presumption that the Legislature did not intend to impose multiple punishments. *Hensley*, 298 Kan. at 435-36. But this presumption is not dispositive and may be superseded by clear legislative intent to the contrary. See *Schoonover*, 281 Kan. at 468-71.

To assist courts in their double-jeopardy analysis, the Kansas Legislature, in K.S.A. 2019 Supp. 21-5109(b), has identified specific circumstances in which it did not intend to impose multiple punishments. Under subsection (b)(2) of the statute, a defendant cannot be convicted of (and thus punished for) both the crime charged and a lesser included crime arising from the same conduct in the same prosecution:

> "(a) When the same conduct of a defendant may establish the commission of more than one crime under the laws of this state, the defendant may be prosecuted for each of such crimes. Each of such crimes may be alleged as a separate count in a single complaint, information or indictment.

> "(b) *Upon prosecution for a crime, the defendant may be convicted of either the crime charged or a lesser included crime, but not both. A lesser included crime is:*

> (1) A lesser degree of the same crime, except that there are no lesser degrees of murder in the first degree under subsection (a)(2) of K.S.A. 21-5402, and amendments thereto;

11

(2) *a crime where all elements of the lesser crime are identical to some of the elements of the crime charged*;

(3) an attempt to commit the crime charged; or

(4) an attempt to commit a crime defined under paragraph (1) or (2)." (Emphases added.) K.S.A. 2019 Supp. 21-5109(a) and (b).

Because subsection (b) is a clear declaration of legislative intent, it removes the need to appeal to canons of construction or legislative history. Thus, in this sense, it supplants the same-elements test in multiplicity challenges involving greater and lesser included offenses. See *Hensley*, 298 Kan. at 436.

B. *Martin's Convictions Are Not Multiplicitous Under K.S.A. 2019 Supp. 21-5109(b)(2)*

Martin argues his convictions are multiplicitous in violation of K.S.A. 2019 Supp. 21-5109(b)(2). To analyze this claim, we must first consider whether his convictions arose from unitary conduct. We must then consider whether possession of methamphetamine is a lesser included offense of no drug-tax stamp as defined under K.S.A. 2019 Supp. 21-5109(b)(2).

Martin's convictions can only violate protections against multiplicity if those convictions arose from unitary conduct. See *Schoonover*, 281 Kan. at 464. As part of this analysis, we would normally consider factors such as whether the acts occurred at the same time, in the same location, and whether there was an intervening event or a fresh impulse motivating some of the conduct. 281 Kan. at 497. But here, the Court of Appeals held Martin's convictions arose from unitary conduct. *Martin*, 2023 WL 2558563, at *6. And the State did not seek review of this holding. Thus, this point remains settled in Martin's favor. See Supreme Court Rule 8.03(b)(6)(C)(i) (2023 Kan. S. Ct. R. at 56); see

12

also *State v. Boettger*, 310 Kan. 800, 804, 450 P.3d 805 (2019) ("When a party does not cross-petition for review on an issue decided adversely to that party by the Court of Appeals, we deem it as settled on review.").

Next, we determine whether Martin was convicted of a charged crime and a lesser included crime in violation of K.S.A. 2019 Supp. 21-5109(b)(2). That subsection defines a lesser included offense as "a crime where all elements of the lesser crime are identical to some of the elements of the crime charged." K.S.A. 2019 Supp. 21-5109(b)(2).

Martin was convicted of possession of methamphetamine under K.S.A. 2019 Supp. 21-5706(a), which provides, "It shall be unlawful for any person to possess any opiates, opium or narcotic drugs, or any stimulant designated in K.S.A. 65-4107(d)(1), (d)(3) or (f)(1), and amendments thereto, or a controlled substance analog thereof." See also K.S.A. 2019 Supp. 65-4107(d)(3) (designating methamphetamine a controlled substance). Possession of methamphetamine is a drug severity level 5 felony. K.S.A. 2019 Supp. 21-5706(c)(1).

Martin was also convicted of possessing a controlled substance with no drug-tax stamp under K.S.A. 79-5204(a) and K.S.A. 79-5208. Under K.S.A. 79-5204(a), "[n]o dealer may possess any . . . controlled substance upon which a tax is imposed pursuant to K.S.A. 79-5202, and amendments thereto, unless the tax has been paid as evidenced by an official stamp or other indicia." And K.S.A. 79-5208 provides that "a dealer distributing or possessing . . . controlled substances without affixing the appropriate stamps, labels or other indicia is guilty of a severity level 10 felony."

We have previously considered whether simple possession of an illegal drug is a lesser included offense of no drug-tax stamp. In *Hensley*, we held possession of marijuana was a lesser included offense of no drug-tax stamp because every element of the former offense was found in the latter. 298 Kan. at 437-48. But the defendant in

13

*Hensley* was convicted of misdemeanor possession of marijuana, which carried a lesser penalty than the maximum penalty for the felony offense of no drug-tax stamp. See *State v. Hensley*, No. 102,055, 2010 WL 3211709, at *1 (Kan. App. 2010) (unpublished opinion); see also K.S.A. 2006 Supp. 65-4162(a) (first conviction for possession of marijuana is misdemeanor). Thus, *Hensley* did not consider whether a crime with a greater penalty could nevertheless be a lesser included offense under K.S.A. 2019 Supp. 21-5109(b)(2).

Here, we are faced with a different scenario. At any given criminal history score, the presumptive sentence for a drug severity level 5 felony (such as possession of methamphetamine) is greater than the sentence for a nondrug severity level 10 felony (such as no drug-tax stamp). See K.S.A. 2019 Supp. 21-6804(a); K.S.A. 2019 Supp. 21-6805(a). And the parties disagree whether a crime with a greater penalty than the crime charged can ever be a "lesser included crime" under K.S.A. 2019 Supp. 21-5109(b)(2). Again, that subsection defines a lesser included crime as "a crime where all elements of the *lesser crime* are identical to some of the elements of the crime charged." (Emphasis added.) Resolution of the parties' disagreement depends on the meaning of the phrase "lesser crime" as used in this provision. And answering this question requires us to engage in statutory interpretation.

1. *We Interpret the Term "Lesser Crime" as Used in K.S.A. 2019 Supp. 21-5109(b)(2) to Mean "a Crime with a Lesser Penalty"*

"The guiding principle in statutory interpretation is that legislative intent governs if that intent can be ascertained." *State v. Strong*, 317 Kan. 197, 203, 527 P.3d 548 (2023). The statute's plain language is the starting point for discerning the Legislature's intent, and we normally give common words their ordinary meaning. But if the statute's language is ambiguous, we may consult legislative history and canons of construction to resolve the ambiguity. *Bruce v. Kelly*, 316 Kan. 218, 224, 514 P.3d 1007 (2022). We

14

determine the plainness or ambiguity of a statute by referencing the language at issue, the context in which that language is used, and the broader context of the statute. *Strong*, 317 Kan. at 203. Generally, "'[a] statute is ambiguous when two or more interpretations can fairly be made.'" *Glaze v. J.K. Williams*, 309 Kan. 562, 564, 439 P.3d 920 (2019).

Here, there are two plausible meanings for the term "lesser crime" as used in K.S.A. 2019 Supp. 21-5109(b)(2). "Lesser" is defined as "of less size, quality, degree, or significance: of lower status." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/lesser; see also *Midwest Crane & Rigging, LLC v. Kansas Corporation Comm'n*, 306 Kan. 845, 851, 397 P.3d 1205 (2017) (courts assume words in statute bear ordinary meanings and dictionary definitions are good sources of ordinary meanings). Consistent with this definition, the term could mean "a crime with fewer elements," as Martin posits. On the other hand, it could also mean "a crime with a lesser penalty," as the State argues. And we see nothing in the context of the specific provision or the rest of the statute that clarifies which meaning the Legislature intended. Because the term "lesser crime" can fairly be interpreted in two ways, the statutory language is ambiguous, and we may look to legislative history and canons of construction to resolve this ambiguity.

In carrying out our task, we begin with the history surrounding the language at issue. In 1998, the Legislature amended K.S.A. 2019 Supp. 21-5109 (previously codified at K.S.A. 21-3107) to include the language in subsection (b)(2). Before then, K.S.A. 21-3107 prohibited convictions for both the crime charged and an "included" crime. It defined "included" crime as "a crime necessarily proved if the crime charged were proved." K.S.A. 21-3107(2)(d) (Furse 1995). The earlier version of the statute also provided that when the crime charged "may include some lesser crime," the trial court had a duty to instruct on both the crime charged and "all lesser crimes of which the accused might be found guilty under the information or indictment and upon the evidence adduced." K.S.A. 21-3107(3) (Furse 1995).

15

Before the 1998 amendments, our caselaw recognized a distinction between the terms "included crimes," "lesser crimes," and "lesser included crimes" within the context of K.S.A. 21-3107. For instance, in *State v. Fike*, 243 Kan. 365, 367, 757 P.2d 724 (1988), we noted that K.S.A. 21-3107 did not refer to lesser included crimes. Instead, the statute mentioned only "included" crimes and "lesser" crimes. But we explained that "[i]f a lesser crime is included in the crime charged, it is commonly referred to as a lesser included offense under [K.S.A.] 21-3107." 243 Kan. at 367. And particularly relevant here, we defined "[a] lesser offense [as] a crime which carries a lesser penalty than the penalty for the crime charged." 243 Kan. at 367. Thus, *Fike* indicates an understanding that to be "lesser included" a crime must be "lesser"—that is, carrying a lesser penalty than the charged crime. And the crime must also be "included"—which, under *Fike*'s interpretation of K.S.A. 21-3107, meant either a crime sharing all its elements with the crime charged or a crime necessarily proved by the factual allegations in the complaint and the evidence adduced at trial.

Other pre-amendment decisions also utilized this same understanding of "lesser included offense"—that is, a crime that is both "lesser" (in terms of penalty) and "included" (in terms of the elements of the offenses). See *State v. Anthony*, 242 Kan. 493, 497, 749 P.2d 37 (1988) (possession of cocaine is included in offense of possession of cocaine with intent to sell but is "not a *lesser* included offense . . . because both offenses are found under the same statute, are of the same degree, and carry the same penalty"); *State v. Newell*, 226 Kan. 295, 297, 597 P.2d 1104 (1979) ("Possession of a narcotic drug contains all the required ingredients of a lesser included offense of possession with intent to sell, except one; each offense is of the same dignity; they are equal.").

In 1998, the Legislature revamped K.S.A. 21-3107. L. 1998, ch. 185, § 1. Subsection (2) was amended to prohibit convictions for the crime charged and a "lesser included" crime (rather than an "included" crime). The Legislature also eliminated the

16

language in K.S.A. 21-3107(2)(d) (Furse 1995) ("a crime necessarily proved if the crime charged were proved") and replaced it with the language now codified at K.S.A. 2019 Supp. 21-5109(b)(2) ("a crime where all elements of the lesser crime are identical to some of the elements of the crime charged").

"Upon prosecution for a crime, the defendant may be convicted of either the crime charged or ~~an~~ *a lesser* included crime, but not both. ~~An~~ *A lesser* included crime ~~may be any of the following~~ *is*:

"(a) A lesser degree of the same crime;

"(b) *a crime where all elements of the lesser crime are identical to some of the elements of the crime charged*;

"*(c) an attempt to commit the crime charged; or*

"~~(c)~~ *(d) an attempt to commit a* ~~lesser degree of the crime charged; or~~ *crime defined under subsection (2)(a) or (2)(b).*

"~~(d) a crime necessarily proved if the crime charged were proved.~~" L. 1998, ch. 185, § 1 (additions indicated by italics; deletions indicated by strikethrough text).

We presume that when drafting the 1998 amendments, the Legislature acted "with full knowledge of the statutory subject matter, including prior and existing law and judicial decisions interpreting the same." *In re M.M.*, 312 Kan. 872, 875, 482 P.3d 583 (2021). Thus, we presume the Legislature knew of the caselaw defining "lesser crime" as a crime carrying a lesser penalty. We also presume the Legislature knew Kansas courts considered the severity level or penalty of the respective crimes in determining whether a crime was a lesser included offense of another crime. And these presumptions weigh in favor of interpreting the term "lesser crime" in K.S.A. 2019 Supp. 21-5109(b)(2) to mean "a crime with a lesser penalty."

17

This interpretation is also consistent with the rule that a "'court should avoid interpreting a statute in such a way that part of it becomes surplusage.'" *State v. Sedillos*, 279 Kan. 777, 782, 112 P.3d 854 (2005). Martin's interpretation of K.S.A. 2019 Supp. 21-5109(b)(2) grants no significance to the term "lesser" in that provision. He claims subsection (b)(2) simply requires all the elements of one crime to be the same as some of the elements of the charged crime. This interpretation renders the terms "lesser" and "included" synonymous. And the Legislature could have omitted the word "lesser" from subsection (b)(2) altogether and the provision would still conform to Martin's interpretation. Thus, Martin's interpretation renders the statutory language surplusage in a way that the State's interpretation would not.

We recognize another canon of construction—the rule of lenity—may weigh in favor of adopting Martin's interpretation of K.S.A. 2019 Supp. 21-5109(b)(2). Under the rule of lenity, courts strictly construe statutory provisions and resolve any reasonable doubt as to their meaning in favor of the defendant. *State v. Newman-Caddell*, 317 Kan. 251, 259-60, 527 P.3d 911 (2023). But the rule of lenity "'is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative intent.'" 317 Kan at 260. And we find the State's proposed interpretation to be the more sensible reading—that is, that a "lesser included" crime must be both "lesser" and "included." Moreover, we need not appeal to the rule of lenity to clarify any lingering ambiguity because other canons of construction allow us to resolve any reasonable doubt as to the meaning of the term "lesser crime" in the statute. See *United States v. Richter*, 796 F.3d 1173, 1188 (10th Cir. 2015) (rule of lenity is rule of last resort courts apply only if ambiguity remains after exhausting all other tools of interpretation).

18

2. *Neither Possession of Methamphetamine Nor No Drug-Tax Stamp Are a Lesser Included Offense of the Other Under K.S.A. 2019 Supp. 21-5109(b)(2)*

The statutory interpretation above confirms that to be a lesser included crime under K.S.A. 2019 Supp. 21-5109(b)(2), a crime must be a lesser crime than the crime charged—meaning carrying a lesser penalty—and must be included in the crime charged—meaning all elements of the lesser crime are identical to some elements of the crime charged. Possession of methamphetamine is not a lesser included crime of no drug-tax stamp under subsection (b)(2) because the former carries a greater penalty than the latter. In other words, possession of methamphetamine is not a "lesser" crime compared to the charged crime of no drug-tax stamp.

And no drug-tax stamp is not a lesser included crime of possession of methamphetamine under K.S.A. 2019 Supp. 21-5109(b)(2) because not all elements of the former are identical to some elements of the latter. The offense of possession of methamphetamine makes it illegal for any person to possess methamphetamine. K.S.A. 2019 Supp. 21-5706(a). The offense of no drug-tax stamp makes it illegal for a dealer to possess a controlled substance, including methamphetamine, without affixing the appropriate stamp. K.S.A. 79-5204(a); K.S.A. 79-5208. And a dealer is defined as "any person who, in violation of Kansas law . . . possesses more than . . . one gram of any controlled substance." K.S.A. 79-5201(c). The charged crime of no drug-tax stamp requires two elements that possession of methamphetamine does not: failure to affix the appropriate stamp and possession of more than one gram of a controlled substance. Thus, the offense of no drug-tax stamp is not an "included" offense of possession of methamphetamine.

Because neither possession of methamphetamine nor failure to affix a drug-tax stamp are a lesser included offense of the other under K.S.A. 2019 Supp. 21-5109(b)(2), Martin's convictions are not multiplicitous under that statute.

19

C. *Martin's Convictions Do Not Violate Federal and State Constitutional Protections Against Double Jeopardy*

Our conclusion that Martin's convictions are not multiplicitous under K.S.A. 2019 Supp. 21-5109(b)(2) does not fully resolve Martin's double-jeopardy challenge. While Martin primarily rests his argument on that statute, he also argues that his convictions violate the Double Jeopardy Clauses of the United States and Kansas Constitutions. And those provisions prohibit multiple punishments for the same offense. K.S.A. 2019 Supp. 21-5109(b)(2) is a clear declaration that the Legislature did not intend to impose multiple punishments for both a charged crime and a lesser included crime. But it is also possible that the Legislature did not intend to impose multiple punishments even if possession of methamphetamine is not a lesser included offense of no drug-tax stamp under that statute.

Thus, we must also consider whether Martin's convictions are multiplicitous under the two-part test identified in *Schoonover*. As already mentioned, the first part of this test (whether the convictions arose from unitary conduct) is already settled in Martin's favor. So, we proceed to the second part of the test to determine whether there are two offenses or one by statutory definition. *Schoonover*, 281 Kan. 453, Syl. ¶ 12.

Our analysis under the second part of the *Schoonover* test requires us to consider whether both the statutory offense of possession of methamphetamine and the statutory offense of no drug-tax stamp each require proof of an element that the other does not. 281 Kan. at 498. As explained above, no drug-tax stamp requires two elements that possession of methamphetamine does not:  failure to affix the appropriate stamp and possession of more than one gram of a controlled substance. See K.S.A. 79-5201(c); K.S.A. 79-5204(a); K.S.A. 79-5208. But possession of methamphetamine has no elements not included in no drug-tax stamp. See K.S.A. 2019 Supp. 21-5706(a). So, even though the elements of the two crimes are not identical, they could still be said to be the

20

"same offense" for double-jeopardy purposes. See *United States v. Isabella*, 918 F.3d 816, 847 (10th Cir. 2019) ("In general, statutes punish the 'same offense' when one offense contains all the elements of another even if it contains additional elements."). Thus, we would not presume the Legislature intended to impose punishments for both crimes. See *Hensley*, 298 Kan. at 435 ("[I]f each statute contains an element not found in the other statute, presumably the legislature intended punishment for both crimes.").

But our analysis does not end here. As already noted, the same-elements test is merely a rule of construction courts use to determine whether the Legislature intended to impose multiple punishments. *Hensley*, 298 Kan. at 435-36; see *Schoonover*, 281 Kan. 453, Syl. ¶¶ 6, 7. And "the rule should not be controlling where there is a clear indication of contrary legislative intent." 281 Kan. 453, Syl. ¶ 7. In determining whether there is contrary legislative intent, we consider the language, structure, and legislative history of the statutes as well as the social evil each statute seeks to address. See 281 Kan. at 469-70, 504.

We begin by noting that even though all elements of possession of methamphetamine are included in no drug-tax stamp, these statutes do not proscribe the same conduct. K.S.A. 2019 Supp. 21-5706(a) focuses on the affirmative act of possessing an illegal narcotic. On the other hand, K.S.A. 79-5204 and K.S.A. 79-5208 target the omission of failing to pay the tax imposed on marijuana and controlled substances.

Indeed, we have previously distinguished these offenses on these grounds. In *State v. Jensen*, 259 Kan. 781, 915 P.2d 109 (1996), we considered whether the imposition of the 100% penalty for failure to pay the drug tax under K.S.A. 79-5208 barred a subsequent criminal prosecution for possession of the illegal drug. We concluded the penalty for failure to pay the tax was not a punishment for purposes of double jeopardy. 259 Kan. at 792, 796. But we also recognized that failure to pay the drug tax was a different offense than possession of the illegal drug. 259 Kan. at 796. As we explained,

"[t]he express language of 79-5208 supports the understanding that what is being penalized is the failure to pay the drug tax" and not the possession of the drug. 259 Kan. at 796. Thus, we concluded multiple punishments imposed for the two different offenses would not implicate double-jeopardy protections. 259 Kan. at 796.

Further, the statutes are designed to achieve different goals. See *Schoonover*, 281 Kan. at 504 (finding Legislature intended to impose multiple punishments because concerned statutory offenses targeted separate evils). The offense of simple possession serves as a deterrent to drug usage. But no drug-tax stamp, while also serving as a deterrent to drug usage, specifically targets "those possessing illegal drugs in larger quantities in response to legislative concern that this flourishing underground economy not operate on a tax-free basis." *State v. Gulledge*, 257 Kan. 915, 919, 924, 896 P.2d 378 (1995); see also *State v. Matson*, 14 Kan. App. 2d 632, 640, 798 P.2d 488 (1990) (discussing legislative history behind drug tax).

The language and structure of the relevant statutes provide further indication that the Legislature intended to impose multiple punishments. For one, no drug-tax stamp is part of the Kansas Drug Tax Act, K.S.A. 79-5201 et seq. (the Act), which is included in the Kansas tax code. In contrast, simple possession is one of several offenses separately enacted as part of the Kansas criminal code. The Act authorizes a conviction and sentence for failure to affix a drug-tax stamp. K.S.A. 79-5208. And the sentence imposed for no drug-tax stamp is determined under the nondrug sentencing grid, while the sentence for simple possession is determined under the drug sentencing grid.

In sum, we hold Martin's convictions for possession of methamphetamine and no drug-tax stamp are not multiplicitous in violation of K.S.A. 2019 Supp. 21-5109(b)(2). Possession of methamphetamine is not a lesser crime of no drug-tax stamp because it carries a greater penalty. Thus, possession of methamphetamine is not a lesser included crime of no drug-tax stamp under subsection (b)(2). And the crime of no drug-tax stamp

22

has elements not included in possession of methamphetamine. Thus, the crime of no drug-tax stamp is not a lesser included offense of possession of methamphetamine under subsection (b)(2).

We also hold Martin's convictions are not multiplicitous in violation of the Double Jeopardy Clauses of the federal and state Constitutions. While all elements of possession of methamphetamine are included in the charged crime of no drug-tax stamp, other indicators of legislative intent show the Legislature intended to impose multiple punishments under the different statutes. Thus, Martin's convictions and sentences are not multiplicitous and do not violate constitutional double-jeopardy protections.

II. *The District Court Did Not Err by Denying Martin's Motion to Suppress the Methamphetamine Found in the Pill Bottle*

Next, Martin argues the district court erred by denying his motion to suppress, and the Court of Appeals erred by affirming the district court's judgment. First, he argues we should reverse the district court's ruling on the suppression motion because it failed to identify any exception justifying Detective Da Giau's warrantless search of the pill bottle. Second, he argues the State failed to carry its burden to prove the search fell within the search-incident-to-arrest exception to the warrant requirement. Finally, he claims the search exceeded the permissible scope of a search incident to arrest. Before reaching the merits of Martin's claims, we first set forth additional facts relevant to the analysis and then identify the controlling legal framework.

A. *Additional Facts*

Before trial, Martin moved to suppress the methamphetamine Detective Da Giau discovered in the pill bottle. He argued the search of the bottle was unlawful because Da

Giau did not have a warrant, the contents of the bottle were not in plain view, and Martin was not under arrest at the time of the search.

At the evidentiary hearing on Martin's motion, Detective Da Giau testified she pulled Martin over for a defective tag light and asked him to step out of the car after she saw an open container of alcohol in the backseat. Officers conducted a pat down search of Martin, removing two knives. Da Giau then searched the car. She found a straw with a white powdery substance on it, which she knew to be drug paraphernalia. She also found five open containers of alcohol and a butane lighter. Da Giau said she planned to arrest Martin after finding those items.

Detective Da Giau then offered to let Martin sit in her patrol car after hearing him complain about the heat. Before he got in her patrol car, she asked if he had anything else on him. He handed her some cash and a cell phone. She asked if he had anything else, and he grabbed an opaque pill bottle from his pocket and handed it to her. Martin told her the bottle contained his heartburn medication.

After getting Martin situated, Detective Da Giau opened the bottle and discovered methamphetamine. She opened the bottle because when the bottle shifted in her hand, it did not feel like it contained the pills depicted on the outside of the bottle. Instead, the contents felt "more scratchy."

Based on the evidence presented at the suppression hearing, the district court denied Martin's motion to suppress. The court found Detective Da Giau had already found multiple open containers of alcohol, a straw with white powdery residue, and a butane lighter in Martin's car before she searched the pill bottle. It also found misdemeanor transportation of an open container is an arrestable offense, and Da Giau already knew she was going to place Martin under arrest when she opened the pill bottle.

At trial, the district court granted Martin a continuing objection to the admission of evidence challenged in the motion to suppress before Detective Da Giau took the stand. Da Giau testified that she placed Martin under arrest after seeing the contents of the pill bottle but before collecting the items of evidence that she had identified during the search of Martin's car.

On appeal, the Court of Appeals affirmed the district court's denial of Martin's motion to suppress. The panel held the search was a valid search incident to a lawful arrest. *Martin*, 2023 WL 2558563, at *3-4. And the panel held the search was also within the scope of a search incident to arrest. 2023 WL 2558563, at *5.

B. *Standard of Review and Relevant Legal Framework*

Appellate courts apply a bifurcated standard of review to a district court's ruling on a motion to suppress. "[T]he factual underpinnings of the district court's decision are reviewed for substantial competent evidence and the ultimate legal conclusion is reviewed de novo." *State v. Parker*, 309 Kan. 1, 4, 430 P.3d 975 (2018).

A warrantless search is presumptively unreasonable under the Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights unless the search falls within a recognized exception to the warrant requirement. *State v. Bates*, 316 Kan. 174, 176, 513 P.3d 483 (2022). "Those recognized exceptions are: 'consent; search incident to a lawful arrest; stop and frisk; probable cause plus exigent circumstances; the emergency doctrine; inventory searches; plain view or feel; and administrative searches of closely regulated businesses.'" *State v. Sanchez-Loredo*, 294 Kan. 50, 55, 272 P.3d 34 (2012). When a defendant moves to suppress evidence obtained as the result of a warrantless search, the State bears the burden of showing the lawfulness of the search. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018).

C. *The District Court's Order is Adequate for Appellate Review*

To begin with, Martin asks us to reverse the district court's ruling on his motion to suppress because the court did not identify a specific exception to the warrant requirement that applied to the search. But Martin cites no authority that the remedy for such an omission is reversal of the ruling. And we have previously reviewed and affirmed a district court's ruling on a motion to suppress even though the district court did not specifically identify the applicable exception. See *State v. Conn*, 278 Kan. 387, 394, 99 P.3d 1108 (2004) (finding statements in written order denying motion to suppress sufficiently broad to enable court to review whether probable cause plus exigent circumstances exception applied to search).

Additionally, parties have an obligation to object to inadequate fact-findings and legal conclusions to preserve issues for appeal. *Fischer v. State*, 296 Kan. 808, 825, 295 P.3d 560 (2013). Where no objection is made, we presume the trial court found all the facts necessary to support its judgment. *Dragon v. Vanguard Industries*, 282 Kan. 349, 356, 144 P.3d 1279 (2006). Even so, we may consider a remand for additional fact-findings and legal conclusions if the district court's ruling is inadequate to disclose the controlling facts or basis for the court's findings. *State v. Rodriguez*, 302 Kan. 85, 91, 350 P.3d 1083 (2015); *Progressive Products, Inc. v. Swartz*, 292 Kan. 947, 961-62, 258 P.3d 969 (2011).

Here, the district court's order was adequate to disclose the legal basis of its ruling—that the search of the pill bottle was a search incident to arrest. Indeed, this is how Martin and the Court of Appeals interpreted the order. And because neither party objected to inadequate fact-findings, we can presume the district court made all findings necessary to support its judgment.

26

D.  *The Search Fell Within the Search-Incident-To-Lawful-Arrest Exception*

Martin argues the search of the pill bottle was not a valid search incident to a lawful arrest because it occurred before his formal arrest and the record does not show his arrest followed shortly after the search.

Incident to a lawful arrest, an arresting officer may search the arrestee's person and the area within the arrestee's immediate control, including personal property immediately associated with the person of the arrestee. *United States v. Chadwick*, 433 U.S. 1, 15, 97 S. Ct. 2476, 53 L. Ed. 2d 538 (1977), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565, 111 S. Ct. 1982, 114 L. Ed. 2d 619 (1991); *Chimel v. California*, 395 U.S. 752, 763, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969). Such a search is justified by the officer's need to "remove any weapons that the [arrestee] might seek to use in order to resist arrest or effect his escape" and "search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." 395 U.S. at 763.

To be a valid search incident to arrest, the search must generally be contemporaneous with the arrest—that is, the search cannot be "'remote in time or place from the arrest.'" *United States v. Pacheco*, 884 F.3d 1031, 1039 (10th Cir. 2018); see also *State v. Wissing*, 52 Kan. App. 2d 918, 922, 379 P.3d 413 (2016). But the arrest need not occur before the search to fall within this exception to the warrant requirement. A warrantless search preceding an arrest is a valid search incident to arrest if "'(1) a legitimate basis for the arrest existed before the search, and (2) the arrest followed shortly after the search.'" *Conn*, 278 Kan. at 393 (quoting *United States v. Anchondo*, 156 F.3d 1043, 1045 [10th Cir. 1998]); see also *Rawlings v. Kentucky*, 448 U.S. 98, 111, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980) ("Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa.").

27

The parties do not dispute that the search of the pill bottle occurred before Martin's arrest. Thus, to determine whether the search was a valid search incident to arrest, we must answer two questions: Was there a legitimate basis to arrest Martin before the search? And did Martin's arrest occur shortly after the search?

Substantial competent evidence supports a finding that Detective Da Giau had a legitimate basis to arrest Martin before she searched the pill bottle. Da Giau stopped Martin for a defective tag light and found several open containers of alcohol in Martin's vehicle. Her discovery of the containers provided probable cause that Martin had committed the crime of transportation of an open container under K.S.A. 2019 Supp. 8-1599(b). See *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, 515, 242 P.3d 1179 (2010) (probable cause exists where officer's knowledge of surrounding facts and circumstances creates reasonable belief that defendant committed a specific crime). And under Kansas statute, Da Giau had authority to arrest Martin because he committed the crime within Da Giau's view. See K.S.A. 22-2401(d) (police may arrest a person for "[a]ny crime, except a traffic infraction or a cigarette or tobacco infraction, [that] has been or is being committed by the person in the officer's view").

While Detective Da Giau had a legitimate basis to arrest Martin before the search, the State must also show that Martin's arrest occurred shortly after the search. *Conn*, 278 Kan. at 393; see also *Knowles v. Iowa*, 525 U.S. 113, 116-17, 119 S. Ct. 484, 142 L. Ed. 2d 492 (1998) (warrantless search during traffic stop not justified on basis that officer technically could arrest for traffic infraction when officer did not actually make an arrest). Martin argues the record does not show he was arrested or that his arrest occurred shortly after the search. He highlights that the State presented no evidence regarding the timing of his arrest at the suppression hearing. But Detective Da Giau testified at trial that to the best of her recollection, she arrested Martin after searching the pill bottle and

28

before collecting the items of evidence that she identified during the search of Martin's car. The Court of Appeals held Da Giau's trial testimony supported a finding that Da Giau arrested Martin shortly after searching the pill bottle. *Martin*, 2023 WL 2558563, at *3-4.

We agree with Martin that the State failed to present any evidence at the suppression hearing establishing the timing of Martin's arrest relative to the search. But we also agree with the Court of Appeals that Detective Da Giau's trial testimony provides substantial competent evidence that Martin's arrest occurred shortly after the search. Thus, the outcome of this issue turns on whether we may consider evidence presented at trial when reviewing a district court's ruling denying a pretrial motion to suppress.

We addressed an adjacent scope-of-review issue in *State v. Jones*, 300 Kan. 630, 333 P.3d 886 (2014). There, we declined to consider evidence presented at a first suppression hearing before a district magistrate judge when reviewing the district court judge's order suppressing evidence after a second hearing. We reasoned that the State was not entitled to a "second bite of the apple" to meet its evidentiary burden to show a search and seizure was lawful by relying on evidence presented at the earlier suppression hearing. 300 Kan. at 645. But we cited no authority for this assertion. We thus decline to rely on *Jones* to craft a more general rule limiting our scope of review in all cases to the evidence presented at the suppression hearing.

The well-established federal rule is that an appellate court may consider both evidence presented at a suppression hearing and evidence presented at trial when reviewing a district court's denial of a motion to suppress. See, e.g., *United States v. Montemayor*, 55 F.4th 1003, 1008 (5th Cir. 2022); *United States v. Gondres-Medrano*, 3 F.4th 708, 713 n.1 (4th Cir. 2021); *United States v. Brown*, 996 F.3d 998, 1002 n.1 (9th Cir. 2021); *United States v. Santillan*, 902 F.3d 49, 58 n.3 (2d Cir. 2018); *United States v. House*, 825 F.3d 381, 388 (8th Cir. 2016); *United States v. Fonseca*, 744 F.3d 674, 680

29

(10th Cir. 2014); see also *State v. Henning*, 975 S.W.2d 290, 297 (Tenn. 1998) ("[T]he majority rule is that appellate courts may consider evidence adduced at trial in evaluating the correctness of a pretrial ruling on a motion to suppress. This rule is well established and uniformly followed by the federal courts.").

Many state courts also follow the same rule. See, e.g., *State v. Randall*, 94 Ariz. 417, 419, 385 P.2d 709 (1963); *People v. Caballero*, 102 Ill. 2d 23, 36, 464 N.E.2d 223 (1984); *Commonwealth v. Young*, 349 Mass. 175, 178, 206 N.E.2d 694 (1965); *State v. Sharp*, 217 Mont. 40, 43, 702 P.2d 959 (1985); *State v. Huffman*, 181 Neb. 356, 357-58, 148 N.W.2d 321 (1967); see also *Henning*, 975 S.W.2d at 297-98 (listing cases).

We are persuaded by two rationales that support this rule. First, if the admissibility of the challenged evidence is ultimately established at trial, then the defendant is not prejudiced by the denial of a motion to suppress. See *Young*, 349 Mass. at 178. Second, a district court's pretrial ruling on a motion to suppress is not final and may be changed after hearing trial testimony. See *People v. Braden*, 34 Ill. 2d 516, 520, 216 N.E.2d 808 (1966); *Sharp*, 217 Mont. at 43.

Indeed, this second rationale dovetails with our contemporaneous-objection rule. Under that rule, when a district court denies a pretrial motion to exclude evidence, we require the defendant to contemporaneously object to the admission of the challenged evidence at trial to preserve the issue for appellate review. K.S.A. 60-404; *State v. Richard*, 300 Kan. 715, 726, 333 P.3d 179 (2014). The purpose of this rule is to enable district courts to reconsider pretrial evidentiary rulings after hearing how the evidence unfolds at trial. *State v. Kelly*, 295 Kan. 587, 590, 285 P.3d 1026 (2012). Because we require parties to give district courts an opportunity to reconsider pretrial evidentiary rulings based on the evidence adduced at trial, it is both logical and consistent that appellate courts likewise consider the trial evidence on review.

30

When considering the evidence presented at the suppression hearing along with the evidence adduced at trial, we find substantial competent evidence supports a finding that Martin's arrest occurred shortly after the search. Detective Da Giau did not testify at trial as to the exact amount of time that elapsed between the search and the arrest. But she did testify that the next thing she did after finding the methamphetamine was to arrest Martin, and she then proceeded to complete her search of the car. This testimony establishes the search and Martin's arrest were sufficiently contemporaneous for purposes of the search incident to arrest exception. See *United States v. Torres-Castro*, 470 F.3d 992, 998 (10th Cir. 2006) (noting "that courts have found that a search may be incident to an arrest in cases where the search and arrest were separated by times ranging from five to sixty minutes"); cf. *Conn*, 278 Kan. at 393-94 (arrest did not follow shortly after a search when State presented no evidence of time of arrest and record showed only that defendant was booked into jail three hours later).

E. *The Search Was Within the Scope of a Search Incident to Arrest*

Having concluded the search-incident-to-arrest exception applies to Detective Da Giau's search of the pill bottle, we now consider whether the search exceeded its permissible scope. Martin argues he had a heightened privacy interest in the pill bottle because it had a lid, and thus Detective Da Giau needed to obtain a search warrant before opening the bottle. He also urges us to reconsider the general scope of searches incident to arrest.

In *Chimel*, the United States Supreme Court limited the scope of a search incident to arrest to the arrestee's person and the area within the arrestee's immediate control. 395 U.S. at 762-63. This limitation corresponds to the justifications supporting the exception—protecting the safety of the arresting officers and preventing the destruction of evidence. 395 U.S. at 762-63.

31

Later, in *United States v. Robinson*, 414 U.S. 218, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973), the Court applied *Chimel* to the search of a cigarette pack found on the arrestee's person. In *Robinson*, an officer arrested the defendant for driving with a revoked license. While patting down the defendant, the officer felt something in the defendant's coat pocket that he could not identify. He pulled out the object, which turned out to be a crumpled-up cigarette pack. The officer could tell the pack did not contain cigarettes, so he opened it and found capsules of heroin. On review, the Court held the officer's search of the cigarette pack was a lawful search incident to arrest under the Fourth Amendment. *Robinson*, 414 U.S. at 236. The Court reasoned the risks identified in *Chimel* are present in all custodial arrests, and thus a lawful arrest authorizes a full search of the arrestee's person regardless of any specific concerns about officer safety or destruction of evidence. 414 U.S. at 235-36.

While the *Robinson* court drew no line between the search of the arrestee's person and the search of the cigarette pack, the Court later clarified that "this exception was limited to 'personal property . . . immediately associated with the person of the arrestee.'" *Riley v. California*, 573 U.S. 373, 384, 134 S. Ct. 2473, 189 L. Ed. 2d 430 (2014) (quoting *Chadwick*, 433 U.S. at 15). And lower federal courts have upheld searches of various items or containers found on an arrestee's person incident to arrest. See, e.g., *United States v. Armstrong*, 16 F.3d 289, 294 (8th Cir. 1994) (search of wallet on person); *United States v. Ziller*, 623 F.2d 562, 563 (9th Cir. 1980) (search of wallet on person); *United States v. Ouedraogo*, 824 Fed. Appx. 714, 720 (11th Cir. 2020) (unpublished opinion) (search of notebook inside arrestee's purse).

However, in *Riley*, the Court declined to extend *Robinson* to permit warrantless searches of cell phones found on an arrestee's person. The *Riley* decision rested on two grounds. First, digital data on cell phones does not present the two risks identified in *Chimel* (harm to officers and destruction of evidence). *Riley*, 573 U.S. at 386. Second,

32

cell phones, "as a category, implicate privacy concerns far beyond those implicated by" the search of other physical objects typically found on an arrestee's person. 573 U.S. at 393.

We find the outcome here is controlled by *Robinson*. Like the officer in *Robinson*, Detective Da Giau searched a container, a pill bottle, Martin had placed in a pocket of his clothing around the time of his arrest. See 414 U.S. at 222-23. Also like in *Robinson*, the feel of the container aroused Da Giau's suspicions regarding its contents. See 414 U.S. at 223. While the record suggests a short delay between the time Da Giau secured the bottle and when she searched it, we do not find this delay significant enough to render the search invalid. Indeed, the record suggests the delay lasted only long enough for Da Giau to complete her task of trying to make Martin more comfortable in the heat. See *Greene v. State*, 585 S.W.3d 800, 808 (Mo. 2019) (lawful arrest justified reasonably delayed search of cigarette pack found in arrestee's pocket at time of arrest).

Martin asserts his case is more like *Riley* than *Robinson.* He claims that like the defendant in *Riley*, who had a heightened privacy interest in his cell phone, Martin had a heightened privacy interest in the pill bottle because the bottle had a lid. He claims this distinguishes the bottle from the cigarette pack in *Robinson*, the contents of which could have fallen out by happenstance.

But the *Riley* decision undercuts Martin's comparison. There, the Court reaffirmed that *Robinson* "strikes the appropriate balance" between individual privacy and law enforcement interests "in the context of physical objects." *Riley*, 573 U.S. at 386. An arrestee has, at best, a marginally greater privacy interest in a closed, unlocked container concealed in his or her clothing than a cigarette pack. This is far different from the privacy interest in a cell phone, which contains vast quantities of information literally in

33

the hands of an arrestee. For this reason, a cell phone differs in both a quantitative and a qualitative sense from other objects that might be carried on an arrestee's person. See 573 U.S. at 386, 393.

Martin also implores us to reconsider the permissible scope of a search incident to a lawful arrest given the technological advances that have enabled officers to secure warrants much more quickly now than in the past. But we are not persuaded this development undermines the rationale behind an officer's authority to search an arrestee's person without first acquiring a warrant. As the *Robinson* Court explained, "[a] police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick *ad hoc* judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search." *Robinson*, 414 U.S. at 235. Moreover, "unknown physical objects may always pose risks, no matter how slight, during the tense atmosphere of a custodial arrest." *Riley*, 573 U.S. at 387. Even though police can attain warrants more quickly now, an officer's decision on how and where to search an arrestee's person remains a quick on-the-spot judgment, and unknown physical objects (as opposed to digital data) continue to pose the same risks justifying the search-incident-to-arrest exception.

Thus, we hold Detective Da Giau's search of the pill bottle did not exceed the permissible scope of a search incident to arrest because, like in *Robinson*, she searched only a physical container carried within Martin's clothing around the time of arrest.

We affirm Martin's convictions and sentence.

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.